STATE of Missouri, Respondent,

v.

Melvin Jewell PRICE, Appellant.

No. 57846.

Supreme Court of Missouri, Division No. 1.

Sept. 9, 1974.

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, for respondent.

Willard B. Bunch, Public Defender, Douglas N. Merritt, Asst. Public Defender, Kansas City, for appellant.

WELBORN, Commissioner.

Appeal from judgment of conviction for murder in the first degree and sentence of life imprisonment, entered on jury verdict.

Shortly after 6:00 P.M. on January 29, 1971, Charles Rodriquez, 15 years old, his sister Christine, 14, and his brother David, 13, were on their way to a volleyball game at Immanuel Lutheran School, located at 42nd and Tracy, in Kansas City. When they arrived at the corner of 42nd and

Tracy, three persons came up behind them. One of them pushed Charles to the ground and demanded money. When Charles said he had no money, the man fired the gun into the ground. Charles repeated that he had no money. One of the others said, "Let's go." The man with the weapon fired two shots, one of which struck Charles in the leg and the other in the chest. The three then ran from the scene. Charles died from the wound.

The person who fired the shot which killed Charles was subsequently identified as John Haliburton. The other two were Jerome Williams and appellant Melvin Price.

Price testified that he had driven Haliburton and Willams to the vicinity of the shooting in his mother's car, but he had let Haliburton and Williams out of the car and had gone to park it. When the Rodriquez children approached, Haliburton and Williams went toward them. Price had parked his car and ran to catch up with his companions. When he reached the place of the encounter, Haliburton had pulled a pistol and demanded money. When Haliburton fired the first shot, Price grabbed him. Haliburton told him "not to grab him no more, he turned and shot and all three of us ran." Price denied that the three had discussed any plan to rob the Rodriquez children.

Other evidence was adduced at the trial which need not be detailed. Four assignments of error are presented on this appeal.

I

Overruling of Motion to Suppress

■ Officer Adams of the Kansas City Police Department arrested appellant a block from the scene of the shooting at 6:50 P.M. He had gone to the scene and had obtained a description of a late model yellow Chevrolet as having been involved. As he drove west on 42nd he saw a yellow 1967 Chevrolet in the 4200 block of Forest, stopped at the west curb. Adams went up to the Chevrolet and appellant who was on the right front seat got out and went toward the front of the car. Adams advised him that he was under arrest for investigation in connection with a shooting at 42nd and Tracy.

Adams testified that the right front door of the Chevrolet was open and that through the opened door he saw a spent .22 caliber shell on the rear seat floor of the car, about four inches behind the front seat. When he picked up that casing, he saw three more approximately a foot away and he took all four.

At the trial defendant moved to suppress the use in evidence of the four spent shell casings. A hearing was held outside the presence of the jury at which Officer Adams testified substantially as above set out. He testified that he could see into the car through the open right front door. He stated that it was dusk, the street lights were on, but he did not recall the location of the street light and did not recall whether the light in the car was on or whether he used a flashlight.

The motion to suppress was overruled. The trial judge stated that he was acting on the basis of the "plain view" doctrine.

On this appeal, appellant contends that the trial court's reliance on the "plain view" doctrine was erroneous because the officer's testimony was not worthy of belief. The trial court cannot be convicted of error on this score. The officer's testimony was not contrary to "the laws of physics" as appellant argues. Appellant premises his argument on the basis that the interior of the car was dark. There was no such testimony. The officer testified that he saw the one shell through the opened door, so there was light from some source. The officer could not identify the source of the light. It is a matter of common knowledge that most automobiles are equipped with interior lights which come on when a door is opened. In any event, the trial court could and did give credence

to the officer's testimony and no reason has been advanced here for ignoring his determination of the question.

## II

### Competency of Witness

A preliminary hearing was held outside the presence of the jury to determine the competency of Maria Gonzales, 10 years of age at the time of the shooting and 11 years old at the time of the trial. At the conclusion of the hearing the trial judge decided that she was competent to testify and she did so over the defendant's objection. Interestingly, the state was disappointed with her testimony and sought to cross-examine her about previous inconsistent statements in her deposition. She was acquainted with Williams, Haliburton and appellant and said she saw them running toward the Rodriquez children and heard shots when they got "up there." She testified that, before they ran up the hill, she heard appellant say "Come on, Rome." She said Jerome Williams was called "Rome."

 The resolution of questions about the competency of a child as a witness is primarily a matter for the trial court. This witness was over 10 years of age and presumably competent to testify. § 491.-060(2), RSMo 1969, V.A.M.S.; State v. Ayers, 470 S.W.2d 534, 536–537[3, 4] (Mo. banc 1971). Her responses to questions on voir dire by defense counsel indicated a lack of recollection about what had transpired at her deposition, but her responses and her testimony at the trial did demonstrate an independent recollection of the events about which she was to testify. The trial court's ruling was not an abuse of its discretion. State v. Ayers, supra; State v. Parton, 487 S.W.2d 523 (Mo. 1972).

## III

### Testimony of Witness Burns

Fourteen-year-old John Burns testified that he knew the Rodriquez children. On the evening of the shooting he was going home from playing football in a church yard and was about ½ block away when he saw three black men whom he did not know walk up to the Rodriquezes, heard one say "Do you have any money?"—then heard four shots in quick succession and the three blacks ran.

On cross-examination, John testified that he lived at 4323 Wayne, that he was coming south. He was asked: "Had you already passed the corner of Forty-second and Tracy on your way home?" His response was: "We stopped on the way to play some—we saw some boys we never saw in our life and we went up there to play with them and then somebody came in a yellow Chevy and they started shooting up there."

No objection was made to the reply as nonresponsive, but defense counsel did not pursue the subject brought up by the response.

On redirect examination, John was asked "What were you going to tell us about a car?" Defense counsel objected on the grounds that the answer to his question was unresponsive and that the question was not proper rebuttal. The objection was overruled and the witness repeated, substantially, his earlier statement. He also testified that this had occurred before Charles was shot.

On recross-examination, the witness said he did not see the faces of the occupants of the Chevrolet, did not know the occupants or how many persons were in the auto.

At the conclusion of the examination of the witness, defense counsel moved for a mistrial on the grounds that the testimony about the shooting from the yellow Chevrolet was "improper rebuttal." He stated that the witness's first reference to the matter was an improper response to his question and that there had been no connection shown between defendant and the yellow Chevrolet from which the shots were fired. The request for a mistrial was

denied as was a subsequent request that the jury be instructed to disregard the testimony because it had not been connected to the defendant.

▬ The exact basis of the complaint here is somewhat obscure. Apparently, the objection is that the state was permitted to expand on redirect examination upon an unresponsive answer from its own witness. No motion to strike the unresponsive answer was made when it was given. That remedy was available to appellant if he considered the response damaging. State v. Ready, 251 S.W.2d 680, 683 (Mo.1952). The redirect examination was not rebuttal as the objection at trial asserted. The redirect examination was a proper method of clarifying a matter brought out on cross-examination. Johnson v. Minihan, 355 Mo. 1208, 200 S.W.2d 334, 336[1, 2] (1947). The trial court properly concluded that there had been sufficient evidence to connect the testimony with the charge against the defendant. A yellow Chevrolet was involved and the finding of spent cartridges in the defendant's vehicle indicated that shots had been fired from the vehicle. The prior activity would bear upon defendant's contention that he was an innocent bystander, without knowledge of a robbery plan. Finally, in this court, appellant makes reference to the evidence as involving another offense, but no such objection was stated at the trial. Therefore, such objection is not available here.

## IV

### Instruction

▬ This case was tried before January 1, 1974. Rule 20, V.A.M.R., adopting MAI-CR, was not in effect at the time of the trial. The trial court did follow the pattern of MAI–CR. Instruction No. 3, complained of by appellant, was a combination of MAI-CR Nos. 2.10 and 6.19, adapted for a charge of joint action. The instruction did not include paragraph 2 of MAI-CR No. 2.10, to the effect that mere presence is insufficient to make the defendant responsible for acts of others. However, as the law stood at the time of trial, such an instruction was cautionary only and not required to be given. State v. Garton, 371 S.W.2d 283, 288–289[5] (Mo. 1963). The instruction given made the defendant responsible for the acts of others in which he participated "knowingly and intentionally" and did not authorize a finding of guilt from mere presence.

▬ Appellant complains that the portion of the instruction relating to action together to commit an "offense" did not limit such offense to one which, under § 559.- 010, RSMo 1969, V.A.M.S., permits invocation of the felony murder doctrine. The instruction did require the jury to find that the death of the victim occurred in the commission of a robbery and defined robbery. There could be no mistaking that the jury was required to find that robbery was the offense involved.

▬ The evidence authorized submission of the charge on the theory that defendant acted jointly with Haliburton and Williams in the robbery attempt. The instruction cannot be faulted on the ground that it was not supported by the evidence.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.