STATE of Missouri, Respondent,

v.

Terrance ANDERSON, Appellant.

No. SC 89895.

Supreme Court of Missouri,
En Banc.

March 9, 2010.

Rehearing Denied April 20, 2010.

530

Deborah B. Wafer, Office of the Public Defender, St. Louis, for appellant.

Chris Koster, Attorney General, Jamie P. Rasmussen, Assistant Attorney General, Jefferson City, for respondent.

ZEL M. FISCHER, Judge.

## I. Introduction and Procedural History

In January 2001, a jury found Terrance Anderson guilty of two counts of first degree murder for killing Debbie and Stephen Rainwater. He was sentenced to life imprisonment without parole for the murder of Stephen and sentenced to death for the murder of Debbie. Those convictions and sentences were affirmed by this Court in *State v. Anderson*, 79 S.W.3d 420 (Mo. banc 2002). Anderson filed a motion for post-conviction relief pursuant to Rule 29.15, which was overruled by the circuit court. On appeal, this Court reversed the death sentence for Debbie's murder and remanded for a retrial of the penalty phase. *Anderson v. State*, 196 S.W.3d 28 (Mo. banc 2006).[1]

---

1. Anderson's life sentence without probation and parole for Stephen's murder was affirmed and not involved in the remand or this appeal. *Anderson v. State*, 196 S.W.3d 28.

At the penalty phase retrial, Anderson was again sentenced to death. He appeals his death sentence on numerous grounds. This Court has exclusive jurisdiction pursuant to Mo. Const. art. V, § 3. The judgment is affirmed.

## II. Standard of Review

On direct appeal, this Court reviews a sentence of death for prejudice, not mere error, and will reverse a trial court's decision only when an alleged error is so prejudicial that the defendant was deprived of a fair trial. *State v. Johnson*, 284 S.W.3d 561, 568 (Mo. banc 2009). Prejudice exists when there is a reasonable probability that the trial court's error affected the outcome at trial. *Id.* Evidence admitted at trial is viewed in the light most favorable to the verdict and is reviewed for abuse of discretion. *Id.*

## III. Point One: Failure to Give Proper Verdict Directing Instruction

Anderson argues that the trial court erred in failing to give the proper verdict director, MAI–CR 3d 313.48A, because it did not include certain language instructing the jury that if it "decide[d] that facts or circumstances in mitigation of punishment outweigh the facts and circumstances in aggravation of punishment" the verdict must be life imprisonment.

### Standard of Review

Whenever there is an MAI–CR instruction applicable under the law, the MAI–CR instruction is to be given to the exclusion of any other instruction. *State v. Ervin*, 979 S.W.2d 149, 158 (Mo. banc 1998). The giving of an instruction in violation of the Notes on Use under MAI–CR constitutes error, its prejudicial effect to be judicially determined. Rule 28.02(f); *State v. Livingston*, 801 S.W.2d 344, 348

(Mo. banc 1991); *State v. White*, 622 S.W.2d 939, 943 (Mo. banc 1981), *overruled on other grounds by State v. O'Brien*, 857 S.W.2d 212 (Mo. banc 1993). Further, if a proper timely objection is made, the giving of an instruction in violation of MAI–CR is presumptively prejudicial unless the contrary is clearly shown. *Livingston*, 801 S.W.2d at 348; *White*, 622 S.W.2d at 943. However, reversal is only warranted when the instructional error is so prejudicial that it deprived the defendant of a fair trial. *State v. Zink*, 181 S.W.3d 66, 74 (Mo. banc 2005); *State v. Middleton*, 995 S.W.2d 443, 452 (Mo. banc 1999).

### Analysis

In capital cases, juries are given an instruction referred to as the "verdict mechanics" instruction; for crimes occurring prior to August 28, 2001, but after August 28, 1993, the pattern instruction is MAI–CR 3d 313.48A. MAI–CR 3d 313.48A, Notes on Use 1. This instruction summarizes the process the jury should use in considering the evidence, explains which verdict forms the jury should complete, and tells the foreperson how to fill in the appropriate forms. *See State v. Storey*, 40 S.W.3d 898, 913 (Mo. banc 2001).

Where there is a retrial of the punishment phase alone, the capital penalty phase instructions are modified in certain respects. MAI–CR 3d 313.00, Notes on Use 6. These modifications are laid out in the Appendix to MAI–CR 3d 313.00. The modified version of MAI–CR 3d 313.48A contained in the Appendix to MAI–CR 3d 313.00 was used in Anderson's case. This modified version of MAI–CR 3d 313.48A was patterned after the September 1, 2003, version of MAI–CR 3d 313.48A.

In 2004, the regular version of MAI–CR 3d 313.48A was revised to include language regarding the jury's consideration of evidence in mitigation. *Com-*

*pare* MAI–CR 3d 313.48A (September 1, 2003) *with* MAI–CR 3d 313.48A (January 1, 2004). More specifically, the 2004 revision added the following paragraph:

> If you unanimously decide that the facts or circumstances in mitigation of punishment outweigh the facts and circumstances in aggravation of punishment, then the defendant must be punished for the murder of [*name of the victim in this count*] by imprisonment for life by the Department of Corrections without eligibility for probation or parole, and your foreperson will sign the verdict form so fixing the punishment.

MAI–CR 3d 313.48A (January 1, 2004). It is clear that this MAI–CR was revised, but the version of MAI–CR 3d 313.48A that was included in the appendix to MAI–CR 3d 313.00 did not include the revisions. Thus, the "verdict mechanics" instruction submitted in Anderson's case, Instruction 10, erroneously omitted the paragraph added in 2004.[2]

▆▆▆ The State argues "[j]ury instructions are not to be viewed in isolation, but are to be taken as a whole to determine whether prejudice occurred." *Storey*, 40 S.W.3d at 912. "This Court must review all submitted instructions together to determine if [the error] resulted in prejudicial error." *White*, 622 S.W.2d at 943. The "absence of language in a particular

instruction does not prejudice the defendant if the subject matter is covered and provided elsewhere in the instruction." *State v. Sandles*, 740 S.W.2d 169, 173 (Mo. banc 1987). And, in fact, this Court has specifically and repeatedly held that the prior version of MAI–CR 3d 313.48A properly instructs the jury, even though it does not contain the mitigation-evidence paragraph that was added in 2004. *State v. Cole*, 71 S.W.3d 163, 176 (Mo. banc 2002); *State v. Tisius*, 92 S.W.3d 751, 770 (Mo. banc 2002); *Storey*, 40 S.W.3d at 913–14.

For example, in *Storey*, the defendant argued that language mentioning mitigating circumstances should have been included in the verdict mechanics instruction. 40 S.W.3d at 913. This Court held that there was no prejudice from this omission because the jury was properly instructed about the consideration of the evidence in the preceding instructions. *Id.* This Court concluded that "these instructions in no way precluded the jury from giving effect to the mitigating evidence." *Id.* at 914.

In this case, as in *Storey*, the jury was properly instructed about the consideration of mitigating circumstances in Instruction 8. Instruction 8, based on MAI–CR 3d 313.44A, instructed the jury how to perform the "weighing step" of the penalty phase deliberations. The jurors were instructed that they should consider the three listed statutory mitigators and "any

2. A change in a pattern instruction does not mandate the conclusion that the prior version incorrectly instructed juries on the law. *State v. Richardson*, 923 S.W.2d 301, 318 (Mo. banc 1996). Here, the 2004 revision to the verdict mechanics instruction was not based on a change in the law, but was simply part of the ongoing effort to clarify the current instructions. The Notes on Use do not specify any change in the law motivating the alteration. *See* MAI–CR 3d 313.48A (2004), Notes on Use. Therefore, it appears that the revision was prompted by this Court's continuing desire to find the best means of instructing the jury.

The ordinary MAI–CR 3d 313.48A was subsequently revised in 2006 to accommodate the holding in *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), by adding further optional language regarding the defendant's age. *See* MAI–CR 3d 313.40A (March 1, 2006), Notes on Use 2; *compare* MAI–CR 3d 313.48A (January 1, 2004) *with* MAI–CR 3d 313.48A (March 1, 2006). The modified MAI used in Anderson's case did not include this revision, but, as there was no dispute that Anderson was over the age of 18 at the time of the crimes, there was no need to use any of the language from the 2006 revision.

other facts or circumstances which [they] find from the evidence in mitigation of punishment." Then the instruction stated that "[i]f each juror determines that there are facts or circumstances in mitigation of punishment sufficient to outweigh the evidence in aggravation of punishment, then [they] must return a verdict fixing defendant's punishment at imprisonment for life by the Department of Corrections without eligibility for probation or parole." Because this instruction included language explaining to the jurors how to consider the mitigation evidence and what to do if they found the mitigating evidence sufficient to outweigh the evidence in aggravation, Anderson was not prejudiced by the omission of that language from the verdict mechanics instruction. *Storey,* 40 S.W.3d at 913–14; *see also Cole,* 71 S.W.3d at 176; *Tisius,* 92 S.W.3d at 770.

### Conclusion

Although the trial court erred in failing to give the current version of MAI–CR 3d 313, the trial court did not commit reversible error when it denied Anderson's objection to Instruction 10 and gave a verdict mechanics instruction patterned after the earlier approved instruction. The State has met its burden to demonstrate no prejudice occurred because the instruction did not misstate the law, and, when read in combination with the other instructions, the jury was properly informed about how to consider mitigating evidence.

### IV. Point Two: Aggravating Circumstances and Double Jeopardy

 Anderson claims that the trial court erred in overruling his motion to dismiss and to quash the information. Anderson contends he was not, nor could he have been, convicted of "aggravated murder in the first degree" in his first trial because the State did not include the aggravating circumstances in the information. Thus, he argues, the State was prohibited from seeking the death penalty on retrial, and the penalty phase of his trial could not be retried because that action would result in double jeopardy.

Anderson admits that section 565.020, RSMo 2000,[3] establishes a single offense of first degree murder, but he argues that the combined effect of sections 565.020, 565.030.4, RSMo Supp.2008, and 565.032.2, along with United States Supreme Court and Missouri case law[4] is to create two kinds of first degree murder: "unaggravated first degree murder," which does not require proof of statutory aggravating circumstances and carries a maximum sentence of life without parole, and "aggravated first degree murder," which requires the additional finding of at least one statutory aggravator and carries a maximum sentence of death. This Court rejected the same argument in *State v. Gill,* 167 S.W.3d 184, 193–94 (Mo. banc 2005).

Nevertheless, Anderson argues that *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), overrules this Court's decisions holding that Missouri's statutory scheme recognizes a single offense of murder with a maximum sentence of death and the required presence of aggravating facts or circumstances in no way increases this maximum penalty. *Gill,* 167 S.W.3d at 194 (citing *Cole,* 71

---

**3.** All references are to RSMo 2000 unless otherwise indicated.

**4.** Anderson cites to *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), *Apprendi v. New Jersey,* 530 U.S. 466, 120

S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), *State v. Whitfield,* 837 S.W.2d 503 (Mo. banc 1992), and *State v. Whitfield,* 107 S.W.3d 253 (Mo. banc 2003).

S.W.3d at 171). This argument was also rejected in *Gill;* this Court stated, *"Blakely* is inapposite because in that case, as in *Apprendi* and *Ring,* the trial judge increased the defendant's sentence without the required finding of fact by the jury." *Id.* Here, as in *Gill,* the jury made all factual findings leading to Anderson's conviction and sentence; therefore, this argument fails.

Missouri law is well-settled that there is only one crime of murder in the first degree, and the State is not required to plead aggravating circumstances in the information or indictment so long as the defendant has pretrial notice of the alleged aggravating factors. *Id.; State v. Glass,* 136 S.W.3d 496, 513 (Mo. banc 2004); *State v. Edwards,* 116 S.W.3d 511, 543 (Mo. banc 2003). Anderson was charged with first degree murder and received notice of the aggravating circumstances the State intended to prove at the penalty phase of trial when the State filed its "Notice of Aggravating Circumstances." The jury in Anderson's first trial found each of the aggravating circumstances beyond a reasonable doubt. The trial court did not err in overruling Anderson's motion to dismiss or his motion to quash the information.

 Finally, Anderson contends that the retrial subjected him to double jeopardy. This argument rests on the false premise that Missouri law recognizes two forms of first degree murder. An "acquittal" based on findings sufficient to establish a legal entitlement to life imprisonment at the trial-like sentencing phase is required to give double jeopardy protections. *Sattazahn v. Pennsylvania,* 537 U.S. 101, 107, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003).

[T]he relevant inquiry for double-jeopardy purposes was not whether the defendant received a life sentence the first time around, but rather whether a first life sentence was an 'acquittal' based on findings sufficient to establish legal entitlement to the life sentence—*i.e.,* findings that the government failed to prove one or more aggravating circumstances beyond a reasonable doubt.

*Id.* at 108, 123 S.Ct. 732. Here, there was no acquittal. The jury found beyond a reasonable doubt each of the three statutory aggravators submitted to it. *Anderson,* 79 S.W.3d at 429. Therefore, double jeopardy protections did not attach.

## V. Point Three: Admission of Autopsy Evidence

 Anderson contends that the trial court erred in overruling his objections to evidence about Stephen Rainwater's autopsy because the evidence was irrelevant to any issue at the retrial of the penalty phase for the murder of Debbie Rainwater; thus, Anderson's rights to due process, fair trial, and reliable sentencing were violated. Anderson claims that the autopsy-related evidence was neither material nor legally relevant. This Court finds that the evidence was relevant and admissible; therefore, the trial court did not err in overruling Anderson's objections.

### Standard of Review

 "The trial court has broad discretion during the penalty phase to admit any evidence it deems helpful to the jury in assessing punishment." *Gill v. State,* 300 S.W.3d 225, 232 (Mo. banc 2009). The trial court's decision in these matters will only be overturned where there is a showing of an abuse of that discretion. *State v. Strong,* 142 S.W.3d 702, 710 (Mo. banc 2004). "On direct appeal, this Court reviews the trial court 'for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived

**538**

the defendant of a fair trial.'" *Id.* (citing *Storey,* 40 S.W.3d at 903).

## Analysis

 Evidence must be relevant to be admissible. In Missouri, the general rule is that relevance is two-tiered: logical and legal. *State v. Anderson,* 76 S.W.3d 275, 276 (Mo. banc 2002) (internal citations omitted). Evidence is logically relevant if it tends to make the existence of a material fact more or less probable. *Id.* But logically relevant evidence is only admissible if it is legally relevant. *Id.* Legal relevance weighs the probative value of the evidence against its costs—unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness. *Id.* (citing *State v. Sladek,* 835 S.W.2d 308, 314 (Mo. banc 1992)). Accordingly, logically relevant evidence is excluded if its prejudice outweighs its probative value.

Here, the evidence was both material and relevant. The jury in the penalty phase of a trial for capital murder must consider statutory aggravating circumstances, including evidence that the murder was committed "while the offender was engaged in the commission or attempted commission of another unlawful homicide." Section 565.032.2(2). Dr. Costin, the pathologist who examined Stephen Rainwater's body, described the injuries Stephen sustained, including the location and extent of the gunshot wound. This evidence was material to demonstrate the cause of Stephen's death and to corroborate testimony that he was found lying motionless on the ground. And the precision of the wound and its location in Stephen's head supported the State's evidence that Debbie's murder was part of a plan.

Anderson argues that, even if the evidence was material, its prejudicial effect outweighed its probative value and it was

unnecessary because Stephen's death was already proven by a certified copy of Anderson's conviction for that crime. Anderson points to the "graphically violent" nature of the testimony. The testimony was a description by Dr. Costin of what he saw while performing an autopsy on Stephen. The jury heard evidence from several witnesses about events on the night of the murders, including the shooting of Stephen. Anderson himself testified about shooting Stephen and about his anger toward the Rainwaters that motivated the murders. There is nothing in the record, nor does Anderson point to any facts that suggest that Dr. Costin's testimony prejudicially affected the outcome in favor of a finding for the death penalty.

 Furthermore, the State must prove each aggravating circumstance beyond a reasonable doubt. Section 565.032.1; *State v. Gill,* 167 S.W.3d at 193. "The state, because it must shoulder the burden of proving the defendant's guilt beyond a reasonable doubt, should not be unduly limited in its quantum of proof." *State v. Smith,* 32 S.W.3d 532, 546 (Mo. banc 2000) (holding that linoleum bearing a message written by the victim in blood was admissible during the guilt phase of trial even though the defendant admitted to being the attacker). The evidence about Stephen's death was material and relevant, and the trial court did not abuse its discretion in admitting the testimony.

## VI. Points Four, Five, and Seven: Objections to Jury Instructions

Anderson argues that the trial court erred in overruling his objections to MAI instructions because each instruction failed to correctly inform the jury of the proper burden of proof.

## Standard of Review

Whenever there is an MAI–CR instruction applicable under the law, the MAI–CR instruction is to be given to the exclusion of any other instruction. *Zink*, 181 S.W.3d at 74; *Ervin*, 979 S.W.2d at 158. Error results when a circuit court fails to give a mandatory instruction. *State v. Gilmore*, 797 S.W.2d 802, 805 (Mo. App.1990). However, reversal is only warranted when the instructional error is so prejudicial that it deprived the defendant of a fair trial. *Zink*, 181 S.W.3d at 74; *Middleton*, 995 S.W.2d at 452.

### a. Point Four: Shifting Burden of Proof

Anderson contends that the trial court erred in overruling his objections to section 565.030.4(3), RSMo Supp.2008, and jury Instruction 8 based on MAI 313.44A and refusing to submit Anderson's proposed Instructions C or D because section 565.030.4(3) and Instruction 8 imposed on Anderson the burden of proving that the evidence in mitigation outweighed the evidence in aggravation. Anderson relies on *Apprendi* and its progeny. The trial court did not err in submitting Instruction 8.

Anderson challenges this Court's rulings in *State v. Johnson*, 284 S.W.3d 561 (Mo. banc 2009), and *State v. McLaughlin*, 265 S.W.3d 257 (Mo. banc 2008), and argues that these recent cases holding that section 565.030.4(3) does not impermissibly shift the burden of proof are inconsistent with United States Supreme Court precedent. These cases do not conflict with United States Supreme Court precedent, and Missouri case law has addressed and resolved this argument. *Johnson*, 284 S.W.3d at 588; *State v. Taylor*, 134 S.W.3d 21, 30 (Mo. banc 2004).

*Ring* requires that any facts necessary to increase the range of punishment must be proven beyond a reasonable doubt. It does not follow from this reasoning, however, that *all* facts considered in determining an appropriate sentence must be found beyond a reasonable doubt. *See Kansas v. Marsh*, 548 U.S. 163, 126 S.Ct. 2516, 165 L.Ed.2d 429 (2006).

In *Marsh*, the United States Supreme Court evaluated the constitutionality of a death penalty sentencing scheme "which require[d] the imposition of the death penalty when the sentencing jury determine[d] that aggravating evidence and mitigating evidence [were] in equipoise." *Id.* at 165–66, 126 S.Ct. 2516. The Court held that such a scheme was constitutionally permissible, stating that "[s]o long as a state's method of allocating the burdens of proof does not lessen the state's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency." *Id.* at 170–71, 126 S.Ct. 2516 (citing *Walton v. Arizona*, 497 U.S. 639, 650, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), *overruled on other grounds by Ring*, 536 U.S. 584, 122 S.Ct. 2428). Therefore, as long as the State is required to prove at least one statutory aggravator beyond a reasonable doubt, rendering the defendant death eligible, the legislature has discretion in allocating the burden of proof guiding the remainder of the jury's determination.

Missouri's statutory scheme, and the instructions in this case, comply with that mandate. Under section 565.030, RSMo Supp.2008, the State must prove the existence of at least one statutory aggravator before the jury may consider imposing the death penalty. After that, the legislature has imposed a balancing procedure that is

reflected in the instructions. Section 565.030.4 ("The trier of fact shall assess and declare the punishment at life imprisonment ... if the trier concludes that there is evidence in mitigation of punishment ... which is sufficient to outweigh the evidence in aggravation of punishment found by the trier."); MAI–CR 3d 313.41A; MAI–CR 3d 313.44A. This Court, also relying on *Marsh*, recently upheld the propriety of the pattern instruction in the face of a claim that it impermissibly shifted the burden of proof in the weighing step. *Johnson*, 284 S.W.3d at 587–89; *see also Taylor*, 134 S.W.3d at 30.

### b. Point Five: Reasonable Doubt Instruction

■ Anderson argues that the trial court erred in overruling his objections to oral instruction MAI–CR 3d 300.03A and written instructions 3, 7, 8, and 10 and in rejecting his proposed instructions. He contends section 565.030.4 and the instructions are unconstitutional because they do not require the state to prove, and the jury to find, beyond a reasonable doubt *"all facts required"* to enhance punishment to death. Anderson again relies on *Apprendi* and its progeny. The trial court did not err in submitting the instructions.

■ In *Johnson*, this Court rejected the same argument, explaining that neither the constitution nor the Missouri death penalty statute require that the State prove the mitigating factors or non-statutory aggravators beyond a reasonable doubt. 284 S.W.3d at 585 (citing *Gill*, 167 S.W.3d at 193). "This Court has stated that under *Ring* and *Apprendi* only evidence functionally equivalent to an element, including statutory aggravating circumstances, must be found beyond a reasonable doubt." *Johnson*, 284 S.W.3d at 585 (citing *State v. Clark*, 197 S.W.3d 598, 601 (Mo. banc 2006)). The rule that only

facts that increase the penalty for a crime beyond the prescribed statutory maximum are required to be found by a jury beyond a reasonable doubt is well-settled in Missouri. *See Zink*, 278 S.W.3d at 193; *Glass*, 136 S.W.3d at 521.

As explained in *Johnson*, neither the constitution nor the Missouri death penalty statute require that the State prove the weighing step beyond a reasonable doubt. As discussed above, it is constitutionally permissible to place the burden of proving mitigating circumstances on the defendant. *Johnson*, 284 S.W.3d at 585; *see also Marsh*, 548 U.S. at 165–66, 126 S.Ct. 2516. Section 565.032 specifically states that the aggravating circumstances must be found beyond a reasonable doubt, but no quantum of proof is assigned to the weighing step. *See, e.g., Gill*, 167 S.W.3d at 193.

Instructions 3, 7, and 10 properly instructed the jury that statutory aggravating factors must be proven beyond a reasonable doubt. Instruction 8 regarding mitigating factors did not instruct the jury that mitigating factors must be proven beyond a reasonable doubt. These four instructions accurately reflect Missouri law, and the trial court did not err in overruling Anderson's objections to them.

### c. Point Seven: Non-statutory Aggravators' Burden of Proof

■ Anderson argues that the trial court erred in overruling his objections to Instruction 7, based on MAI–CR 3d 313.41A, and Instruction 8, based on MAI–CR 3d 313.44A, because they failed to provide any direction to the jury regarding the burden of proof for non-statutory aggravating evidence. Anderson further argues that the reasoning in *Clark*, 197 S.W.3d at 602, and *State v. Fassero*, 256 S.W.3d 109, 119 (Mo. banc 2008), requiring that evidence of prior crimes for which the

defendant was acquitted must be proven by a preponderance of the evidence, should be adopted and extended such that both statutory and non-statutory aggravators must be proven beyond a reasonable doubt. The trial court did not err.

The reasoning in *Clark* and *Fassero* does not apply in this case. The rule set out in *Clark* is that a state may present evidence of criminal conduct for which the defendant was acquitted, but the penalty phase jury may only consider such evidence if it is proven by a preponderance of the evidence. 197 S.W.3d at 601. Anderson claims that *Clark* and *Fassero* establish that a jury at the penalty phase of any felony trial must be instructed on the burden of proof of non-statutory aggravating evidence if it is to be used in determining sentence and that, because the evidence at issue here is "aggravating evidence," it must be proven beyond a reasonable doubt. This is incorrect. *Clark* and *Fassero* dealt specifically with evidence of prior adjudicated crimes, not all non-statutory aggravating evidence, and this Court has repeatedly rejected the argument that non-statutory aggravators must be proven beyond a reasonable doubt. *See Zink*, 278 S.W.3d at 193; *Johnson*, 284 S.W.3d at 585; *Glass*, 136 S.W.3d at 517.

Anderson contends that if the beyond a reasonable doubt standard does not apply, then non-statutory aggravating evidence must be proven by a preponderance of the evidence. As noted, *Clark* is inapplicable here. "The trial court has discretion during the punishment phase of trial to admit whatever evidence it deems helpful to the jury in assessing punishment." *Strong*, 142 S.W.3d at 720 (citing *Glass*, 136 S.W.3d at 517, and *State v. Six*, 805 S.W.2d 159, 166 (Mo. banc 1991)). The jury may consider not only the nature and circumstances of the crime but also the character of the defendant. *Six*, 805 S.W.2d at 166.

The evidence that Anderson argues was required to be proven by at least a preponderance of the evidence consisted of the orders of protection that Debbie and Abbey Rainwater obtained against Anderson and Abbey's allegations that he abused her. The trial court did not err in excluding the burden of proof about the evidence of Anderson's prior unadjudicated bad acts from the jury instructions. This Court has repeatedly upheld the admission of such evidence and has never held that this evidence must be proven by a preponderance of the evidence. *See Strong*, 142 S.W.3d at 720 (the trial court did not err in admitting testimony about the defendant's prior assaults on his ex-wife and a former co-worker); *Glass*, 136 S.W.3d at 517 (evidence that defendant, who was charged with murdering a teenage girl, had walked into residences of teenage girls uninvited on two separate occasions was admissible during penalty phase of trial); *State v. Winfield*, 5 S.W.3d 505, 515 (Mo. banc 1999) (testimony from a former girlfriend of the defendant that he hit her and threatened her with a gun was admissible during the guilt phase of trial). Furthermore, section 557.036.3, RSMo Supp.2008, governing the admission of evidence at the punishment phase of trial, is silent on the burden of proof for this type of character evidence. There is no basis for holding that the state was required to prove non-statutory aggravating evidence by a preponderance of the evidence.

Here, Instruction 6 told the jury that they had to find at least one statutory aggravator beyond a reasonable doubt. Instruction 6 allowed the jury to proceed if it had found the statutory aggravator beyond a reasonable doubt. Instruction 8 told the jury to consider all mitigating circumstances and to impose a life sen-

tence if the jurors found that the mitigating evidence outweighed the evidence in aggravation. Instruction 9 told the jury that it could fix a sentence of life even if it had made all the appropriate findings for a death sentence. This procedure assured that the jurors made the constitutionally required findings beyond a reasonable doubt and gave them the opportunity to consider mitigating circumstances.

## VII. Point Six: Jury Selection Procedures

Anderson argues that the trial court erred in overruling his motion to quash the jury panel because jury selection procedures in Cape Girardeau County systematically exclude black jurors. "It is well established that a criminal defendant has a constitutional right to the unbiased selection of a jury drawn from a fair cross-section of the community." *State v. Brooks*, 960 S.W.2d 479, 487 (Mo. banc 1997).

Anderson objected to the jury selection procedures at the end of voir dire. Anderson sought to quash the entire panel due to the fact that no black jurors were on the panel. The trial court denied this request. "A defendant has the burden of showing a *prima facie* violation of the cross-section requirement." *State v. Sumowski*, 794 S.W.2d 643, 647 (Mo. banc 1990) (citing *State v. Johnson*, 606 S.W.2d 655, 657 (Mo. banc 1980)). "In order to establish a *prima facie* case, defendant must show that the underrepresentation of other groups was due to a systematic exclusion in the selection process." *Id.* (citing *Duren v. Missouri*, 439 U.S. 357, 367, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979)). "The defendant must plead and prove a fatal departure from the statutory procedure for jury selection prior to the trial." *Id.* at 647–48 (citing *State v. Bynum*, 680 S.W.2d 156, 160 (Mo. banc 1984)).

Anderson did not plead and prove a violation of the statutory procedure for jury selection prior to trial; he objected to the jury being all white and argued that the jury was not representative. He offered no evidence of any statutory violation. Nor did he offer statistical evidence that the jury selection procedure systematically excluded black jurors. Anderson relied solely on the jurors in the panel selected for this case. "A single panel that fails to mirror the make-up of the community is insufficient to establish a *prima facie* case of systematic exclusion." *State v. Ringo*, 30 S.W.3d 811, 820 (Mo. banc 2000) (citing *State v. Garrett*, 627 S.W.2d 635, 639 (Mo. banc 1982)).

Additionally, Anderson argues that section 494.430, RSMo Supp.2008, which allows a judge, *ex parte*, to excuse jurors, resulted in a systematic exclusion of black jurors. Anderson contends that, because the statute does not require a judge to keep a record of the number and race of venirepersons excluded under section 494.430, there is no way to determine the extent to which this section contributes to the systematic exclusion of black individuals. There is nothing about section 494.430 that suggests that it would tend to lead to a systematic exclusion of certain jurors, absent an allegation of racial discrimination on the part of the judge, which Anderson does not make.

## VIII. Point Eight: Opening and Closing Arguments

Anderson argues that the trial court erred in overruling his objections and request for a mistrial to the State's closing argument.

First, Anderson contends that the trial court erred in allowing the prosecutor to state in his closing arguments that mercy is "something that is given to the

weak and to the innocent" and that Anderson does not qualify for mercy. Anderson's counsel objected to the prosecutor's comment, arguing that it was a misstatement of the law. Misstatements of the law are impermissible during closing arguments, and the trial judge has a duty to restrain such arguments. *State v. Blakeburn*, 859 S.W.2d 170, 174 (Mo.App.1993). The prosecutor's discussion of mercy, however, was not a misstatement of the law. Rather, the argument that mercy is for the weak and innocent was rhetoric designed to emphasize the State's position that mercy was inappropriate in this case, after Anderson had argued for mercy in his closing argument. This Court has repeatedly held that prosecutors may discuss mercy during closing arguments. *State v. Forrest*, 183 S.W.3d 218, 228 (Mo. banc 2006); *State v. Rousan*, 961 S.W.2d 831, 851 (Mo. banc 1998); *State v. Mease*, 842 S.W.2d 98, 109–10 (Mo. banc 1992); *State v. Clemmons*, 753 S.W.2d 901, 910 (Mo. banc 1988) (distinguishing between mercy and sympathy). The trial court did not err in allowing the prosecutor to discuss mercy in his closing argument.

Second, Anderson claims that the trial court erred in allowing the prosecutor to state in his closing argument that sending Anderson back to prison was "doing nothing." The prosecutor quoted Edmund Burke, stating: "The only thing necessary for evil to triumph is for good men to do nothing. I suggest to you that if you send this man back to prison, you will have done nothing." Anderson's attorney timely objected to this statement. In *Forrest*, 183 S.W.3d at 228, this Court upheld the use of the same quote, noting that the quote "interrelate[d] with the concept of whether the jury should be merciful to Appellant." The use of this quote was permissible, and the trial court did not err in overruling Anderson's objection.

Third, Anderson requests plain error review for the prosecutor's statement in closing arguments that "for the ultimate crime, not once, but twice, two ultimate crimes, that the ultimate punishment is necessary and proper." Plain error relief is rarely appropriate for claims involving closing arguments because the decision to object is often a matter of trial strategy. *Johnson*, 284 S.W.3d at 573. Closing arguments must be examined in the context of the entire record. *Id.* Under plain error review, a conviction will be reversed for improper closing argument only when it is established that the argument had a decisive effect on the outcome of the trial and amounts to manifest injustice. *Middleton*, 995 S.W.2d at 456. The burden to prove decisive effect is on the appellant. *State v. Parker*, 856 S.W.2d 331, 333 (Mo. banc 1993).

Anderson argues that the prosecutor's statement about two ultimate crimes was a thinly veiled attempt to tell the jury to sentence Anderson to death for Stephen Rainwater's murder. Anderson does not present any evidence indicating that the prosecutor's statement had a decisive effect on the outcome of this case. Further, whether the murder of Debbie Rainwater occurred in the commission of another unlawful homicide was an aggravating factor submitted to the jury. It was not plain error for the trial court to allow the prosecutor to speak of two ultimate crimes in his closing arguments.

## IX. Proportionality Review

Pursuant to section 565.035.3, this Court is required to engage in a proportionality review and determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection 2 of section 565.032 and any other circumstance found;

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant.

### a. Passion, Prejudice, and Arbitrary Factors

Anderson does not allege, and a thorough review of the record does not indicate, that the death sentence was influenced by passion, prejudice, or other arbitrary factors.

### b. Aggravating Factors

The jury found two statutory aggravating circumstances. The jury found that the murder of Debbie Rainwater was committed while the defendant was engaged in the commission or attempted commission of another unlawful homicide. Section 565.032.2(2). And the jury found that the murder of Debbie Rainwater was outrageously or wantonly vile, horrible or inhumane in that it involved depravity of mind because the defendant killed Debbie Rainwater as part of a plan to kill more than one person, exhibiting a callous disregard for the sanctity of human life. Section 565.032.2(7). Anderson shot Debbie Rainwater shortly before shooting Stephen Rainwater, and he shot Debbie as she begged for her life and was holding his infant child. The evidence presented in this case supports, beyond a reasonable doubt, the jury's finding of the two statutory aggravating factors.

### c. Similar Cases

The death sentence was neither excessive nor disproportionate to the death penalty imposed in similar cases, considering the crime, the strength of the evidence and the defendant. This Court has often upheld death sentences where the defendant murdered more than one victim. *See, e.g., State v. Christeson,* 50 S.W.3d 251, 273 (Mo. banc 2001); *Smith,* 32 S.W.3d at 559; *Ringo,* 30 S.W.3d at 826; *State v. Johnson,* 968 S.W.2d 123, 135 (Mo. banc 1998); *State v. Ramsey,* 864 S.W.2d 320, 327 (Mo. banc 1993). This Court has also upheld death sentences when the murder involved depravity of mind showing a callous disregard for the sanctity of all human life. *See Christeson,* 50 S.W.3d at 273; *State v. Wolfe,* 13 S.W.3d 248, 265 (Mo. banc 2000); *Middleton,* 995 S.W.2d at 467; *Johnson,* 968 S.W.2d at 135; *Rousan,* 961 S.W.2d at 854. Additionally, the death sentence has been upheld when a defendant murders someone who is helpless and defenseless, as Debbie Rainwater was when Anderson shot her. *See Rousan,* 961 S.W.2d at 854; *State v. Barton,* 998 S.W.2d 19, 29 (Mo. banc 1999); *State v. Clayton,* 995 S.W.2d 468, 484 (Mo. banc 1999).

### Conclusion

For the foregoing reasons, the judgment is affirmed.

PRICE, C.J., and RUSSELL, J., concur.

BRECKENRIDGE, J., concurs in part and concurs in result in separate opinion filed; WOLFF, J., concurs in part in opinion of BRECKENRIDGE, J.

WOLFF, J., dissents in separate opinion filed; TEITELMAN and STITH, JJ., concur in opinion of WOLFF, J.

PATRICIA BRECKENRIDGE, Judge, concurring in part and concurring in result.

While I concur with the principal opinion's conclusion that the imposition of the

death penalty on Terrance L. Anderson in this case was neither excessive nor disproportionate, I do not agree that only factually similar cases resulting in a death sentence should be considered when conducting the proportionality review required by section 565.035.3.[1]

Section 565.035.3 requires consideration of all factually similar cases in which the death penalty was submitted to the jury, including those resulting in a sentence of life imprisonment without the possibility of probation or parole. The legislature directed in section 565.035.6 that records be compiled of "all cases in which the sentence of death or life imprisonment without probation or parole was imposed." This plain language shows that the legislature intended factually similar cases with sentences of life imprisonment to be considered in conducting proportionality review. As Judge Stith's concurring opinion concurring in result in *Deck* noted, "It would be pointless for section 565.035.6 to require this Court to accumulate records of cases in which life imprisonment is imposed if life imprisonment cases are inherently dissimilar to this Court's proportionality review under the statute." *State v. Deck*, 303 S.W.3d 527, 559 (Mo. banc 2010) (Stith, J., concurring).

Because the principal opinion in this case considered only factually similar cases that resulted in the imposition of the death penalty, I believe the principal opinion incorrectly applies the law. Instead, it is necessary when conducting proportionality review to only not consider similar cases in which the death penalty was imposed but also to consider similar cases in which the defendant received a sentence of life im-' prisonment without the possibility of probation or parole.

## Proportionality Review

Because the proportionality review required by section 565.035.3 involves comparing the factual similarities of cases, a more detailed factual background than is set forth in the principal opinion is required. The basic facts of this case are as follows: [2]

Abbey Rainwater and Terrance Anderson began dating in 1996. When Abbey became pregnant, her parents invited Mr. Anderson to live with them. After he moved in, Mr. Anderson became abusive toward Abbey, and her parents asked him to move out.

After the birth of their child, Mr. Anderson violently assaulted Abbey on two occasions. During the second assault, Mr. Anderson told Abbey that if she told anyone what he had done to her, he would kill her family, he would make her watch him kill their baby, and then he would kill her and himself. The next morning, Abbey obtained a restraining order against Mr. Anderson and notified him of the order over the telephone. She told him that he could not see her and that his visitation with the baby would be arranged through the court. Mr. Anderson then said he knew what he had to do. Late that afternoon, he obtained a handgun.

That evening, Mr. Anderson went to the home of Abbey's parents and kicked in the door. Abbey's mother told Abbey to run. Abbey ran to a neighbor's house, where she contacted the police; her 10–year–old sister stopped fleeing shortly after she got outdoors. Two of Abbey's friends, who were also at the Rainwater residence at

---

1. Unless otherwise noted, all statutory references are to RSMo 2000.

2. These facts are taken from this Court's opinion in Mr. Anderson's original direct appeal, *State v. Anderson*, 79 S.W.3d 420, 427–28 (Mo. banc 2002).

the time of the break-in, stayed in the house.

Mr. Anderson approached Abbey's mother Debbie Rainwater, who was holding the baby. Mr. Anderson pointed the gun at her, telling her she was going to die. Ms. Rainwater got down on her knees and begged for her life. Mr. Anderson placed the gun against the back of her head and fired. The bullet killed her instantly. Mr. Anderson then grabbed one of Abbey's friends, who had just witnessed the killing, went outside with her, and told her to yell for Abbey and the others to come out. No one came out of hiding.

While Mr. Anderson was in front of the house, Abbey's sister, who had heard the gunshot, went back into the house and heard the baby crying. She found her mother's dead body lying on top of the baby. She lifted her mother's body, picked up the baby and attempted to hide with her in the house. However, before Abbey's sister could hide, Mr. Anderson found her and took the baby.

Mr. Anderson and the sister walked to the front yard. Mr. Anderson pointed the gun at the baby's head and yelled that he would shoot the baby if Abbey did not come out. At that time, Abbey's father Stephen pulled up to the house in his vehicle. Mr. Anderson, still holding the baby, approached Mr. Rainwater and began talking to him. He then shot Mr. Rainwater in the forehead, killing him. He took Abbey's sister and the baby into the house and ordered the sister to search for survivors. Even though she saw one of Abbey's friends hiding, she did not tell Mr. Anderson. Eventually, police officers arrived at the residence and surrounded the house. At one point, Mr. Anderson appeared at a window and held the baby in front of him as a human shield while he waved his handgun in the direction of the officers. After some time, Mr. Anderson surrendered and was placed under arrest and taken into custody.

A jury convicted Mr. Anderson of the murders of both Mr. and Ms. Rainwater and found his punishment should be death for killing of Ms. Rainwater. As part of its assessment of the death sentence, the jury found two statutory aggravating circumstances. First, the jury found that Debbie's murder was committed while Mr. Anderson defendant was engaged in the commission of another unlawful homicide. Section 565.032.2(2). Second, the jury found that Debbie's murder involved depravity of mind because Mr. Anderson killed her as part of his plan to kill more than one person, exhibiting a callous disregard for the sanctity of human life. Section 565.032.2(7).

In this appeal of his death sentence, Mr. Anderson does not claim that his sentence of death was excessive or disproportionate, nor does he cite any cases demonstrating that his sentence was excessive or disproportionate. Despite his failure to raise the issue, this Court is required, under section 565.035.3, to conduct a proportionality review *sua sponte* by considering other factually similar cases, including those that resulted in a sentence of life imprisonment without the possibility of probation or parole. As such, this Court should consider cases in which multiple murders were committed with depravity of mind and in which the jury nevertheless decided to impose a sentence of life imprisonment.

In *Deck*, the concurring opinion of Judge Stith analyzed many such cases. Consequently, this opinion utilizes many of the same decisions examined in that opinion in addition to others. In most cases involving multiple homicides that resulted in a life sentence, more than one person was implicated in the crime, and there was conflicting evidence as to who actually

committed the murders. *State v. Ramsey,* 874 S.W.2d 414 (Mo.App.1994) (prosecution lacked direct evidence that defendant actually shot the victims during the commission of a felony carried out by defendant and his uncle); *State v. Jennings,* 815 S.W.2d 434 (Mo.App.1991) (multiple co-conspirators accused each other as the actual killers in multiple homicide); *State v. Merchant,* 791 S.W.2d 840 (Mo.App.1990) (defendant claiming emotional disturbance voluntarily turned himself in to police after committing the second-degree murder of his ex-wife and the first-degree murder of her boyfriend); *State v. Murray,* 778 S.W.2d 730 (Mo.App.1989) (unclear which of two co-defendants committed the two murders in the course of a joint felony); *State v. Harper,* 713 S.W.2d 7 (Mo.App. 1986) (credibility of co-defendant who claimed defendant shot victims was undermined by plea deal he made with state; also, testimony of surviving victim identifying defendant was possibly contrary to co-defendant's testimony that defendant just shot once and was unsure if he hit anyone); *State v. Clark,* 711 S.W.2d 928 (Mo.App. 1986) (defendant did not confess to the crime and presented evidence that one of two murders occurred during a struggle for his gun); *State v. Downs,* 593 S.W.2d 535 (Mo. banc 1980) (defendant without prior convictions denied involvement in the murders, while statements of his co-defendants inconsistently implicated him).

While the cases above are factually similar to Mr. Anderson's case, they are distinguishable in that most involved multiple defendants and evidence that was uncertain as to which of those defendants actually committed the murders.[3] This is a key distinction from the case of Mr. Anderson, who was clearly the sole perpetrator of the crime, as clear evidence demonstrated that he alone committed the murders. It is also important to consider that Mr. Anderson killed Ms. Rainwater as part of his plan to kill more than one person, which the jury found constituted a callous disregard for the sanctity of human life. In fact, five other lives, including that of his three-month-old child, were endangered during his killing spree.

Although I believe the principal opinion applied an erroneous standard in conducting its proportionality review by not reviewing similar life-imprisonment cases, a review of those cases does not change the conclusion that Mr. Anderson's sentence was not disproportionate or excessive to the sentences imposed in similar cases. Accordingly, I concur in the result reached by the principal opinion in its proportionality review and concur in the remainder of the opinion.

MICHAEL A. WOLFF, Judge, dissenting.

I suppose that there is a jury instruction from the 19th century allowing the jury to decide whether, if the defendant is convicted, he should be hanged. But in the long-running effort to get death sentencing right—an effort that in the end might turn out to be futile—the justice system adapts, one hopes, by constant improvement. The outdated version of the verdict mechanics instruction—by which the jury was told how to proceed in its determinations—described the process of considering aggravating factors while neglecting to mention mitigating factors. The instruction is presumed by law to be prejudicial, a presumption that the state does not rebut.

---

3. While I find the factually similar cases analyzed above to be distinguishable from the present case, this opinion nevertheless cites them because section 565.035.5 requires this Court include in its decision "a reference to those similar cases which it took into consideration."

The judgment should be reversed and the case remanded for a new penalty phase trial. I respectfully dissent.

Clear error occurred in this case when Instruction 10 used an outdated version of MAI–CR 313.48A, the verdict mechanics instruction. Rule 28.02(c); *State v. Storey*, 40 S.W.3d 898, 912 (Mo. banc 2001) ("[w]henever there is an MAI–CR instruction or verdict form applicable under the law and Notes on Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form.")

As the rule requires, this Court must determine the error's prejudicial effect. Rule 28.02(f). As the majority notes, because an incorrect instruction was given in this case, the burden is on the state to show that prejudice did not occur. *See State v. Livingston*, 801 S.W.2d 344, 348 (Mo. banc 1990) (citing *State v. Graves*, 588 S.W.2d 495, 497 (Mo. banc 1979)) (so long as a timely objection is made to the incorrect instructions, the error is "presumptively prejudicial unless the contrary is clearly determined"). In contrast, the Court's earlier cases upholding this version of MAI–CR 413.48A did so when it was the defendant who had the burden of showing that prejudice occurred. *See, e.g., Storey*, 40 S.W.3d at 913; *see also State v. Cole*, 71 S.W.3d 163, 176 (Mo. banc 2002) (holding *Storey* was correctly decided); *State v. Tisius*, 92 S.W.3d 751, 770 (Mo. banc 2002) (same).[1]

Although Rule 28.03 requires only that an objection be made before the jury begins deliberations to preserve error, a counsel's failure to object at the time the instruction first is given may be considered in determining prejudice. *Livingston*, 801 S.W.2d at 349. The reason given for considering this is that "when the court gives the text instruction and the deviation consists of failure to modify it and the defect is not readily apparent to alert counsel preparing to argue the case, there is very little likelihood the jury will be confused or misled." *Id.* (citing *Hudson v. Carr*, 668 S.W.2d 68, 71–72 (Mo. banc 1984)). But in this case, Anderson's attorney twice objected to Instruction 10 at the instruction conference. She specifically stated that "the mitigating step as it's written in the statute" was not included. The fact that the defect in the instruction was objected to at the instruction conference indicates that the defect was readily apparent and, therefore, weighs in favor of a finding of prejudice.

Further, as the majority acknowledges, the purpose of a verdict mechanics instruction is to summarize the process that a capital jury is to follow. Verdict mechanics instructions are rare, but the MAI–CR requires them to be used in every death penalty case, undoubtedly in recognition for the greater need for "reliability in the determination that death is the appropriate punishment." *Deck v. State*, 68 S.W.3d 418, 430 (Mo. banc 2002) (citations omitted).[2] A verdict mechanics instruction puts into one single instruction each possi-

---

[1]. Similarly, this Court previously has held that no error occurred where non–MAI–CR instructions were given prior to the passage of the MAI–CR, even though error would have existed if the instructions were not given after its passage. *See, e.g., State v. Price*, 513 S.W.2d 392, 396 (Mo.1974) (no error where the MAI–CR was not yet in effect and the instruction given followed "the law [as it] stood at the time of the trial"); *State v. Martin*, 511 S.W.2d 777, 778 (Mo.1974) (same).

[2]. As the majority recognizes, the purpose of updating MAI–CR 3d 313.48A was to instruct the jurors better about what they were supposed to do. Therefore, one rationally can conclude that the prior version did not inform the jury fully of its responsibilities.

ble alternative the jury could find and specifies what punishment then should be assigned for the particular alternative, even though many of these alternatives do appear in individual, separate instructions given to the jury.[3] Here, the outdated version of MAI–CR 313.48A that was used contained none of the alternatives concerning mitigation but did contain all of the other alternatives, including those related to aggravation.

"The purpose of verdict-directing instructions is to make clear to the jury the essential fact issues they are to decide." *Hooper v. Conrad,* 364 Mo. 176, 260 S.W.2d 496, 500 (1953). This Court has held that a verdict-directing instruction that purports to cover the whole case but that leaves out one of the defendant's defenses constitutes prejudicial error, *regardless* of whether the defense is covered in another instruction. *State v. Winn,* 324 S.W.2d 637, 640–41 (Mo.1959) (a verdict-directing instruction that excluded the idea of self-defense was reversible error); *see also State v. Pruett,* 425 S.W.2d 116, 118 (Mo.1968) (citing several of this Court's cases as holding that "[t]here is *no question* that a verdict-directing instruction which purports to cover the whole case and ignores a defense supported by the

evidence is erroneous and constitutes reversible error") (emphasis added).

In this case, the verdict mechanics instruction acted like a verdict-directing instruction, setting out each possible alternative that the jury could find and the corresponding punishment. There were other instructions provided to the jury that referenced how the jury was to apply the mitigating evidence. But leaving out the alternatives that related to mitigation essentially amounted to leaving out one of the defendant's defenses during the punishment phase, which this Court has held to be prejudicial error in a verdict-directing instruction. Where, as in this case, this Court has approved a pattern-MAI-CR verdict mechanics instruction that contains explicit language as to the alternatives the jury should consider—and defense counsel correctly objects to omission of required language—the trial court's refusal to include each of the relevant alternatives is prejudicial error.

There was significant mitigation evidence for Anderson. The failure to refer to mitigation evidence in the verdict mechanics instruction was prejudicial error. Testimony from Anderson's immediate family showed that he was elated about the birth of his daughter and was very protec-

---

**3.** Specifically, in the current version of MAI–CR 313.48A the jurors are informed that if they unanimously decide the defendant should be put to death, the verdict form must be completed by the foreperson with specific statutory aggravating circumstances that were found beyond a reasonable doubt. If, however, the jury unanimously finds that the facts or circumstances in mitigation outweigh those in aggravation, the defendant must be punished by imprisonment for life without eligibility for probation or parole. Similarly, if the jurors unanimously decide that the evidence and instructions of law show that the defendant also should be punished by imprisonment for life, the verdict form should be signed accordingly. Further, if the jury is unable to find unanimously at least one statu-

tory aggravating circumstance beyond a reasonable doubt or that facts and circumstances in aggravation of punishment warrant the sentence of death, the punishment must be imprisonment for life. Finally, if the jury does find unanimously the presence of at least one statutory aggravating circumstance beyond a reasonable doubt and that the facts and circumstances in aggravation of punishment warrant the sentence of death, but the jury is unable to find unanimously that the facts or circumstances in mitigation outweigh the facts and circumstances in aggravation and there is no agreement on punishment, then this must be indicated on the verdict form. In this case, the jury is informed that the court itself will fix the defendant's punishment at death or at imprisonment for life.

tive of her. The state's own witnesses testified about Anderson's joy in learning he would become a father and his commitment to being a part of his child's life. Witnesses indicated that Anderson's motive for killing the Rainwaters was that he became really upset when he learned that they were trying to keep him from seeing his daughter and that they hated him and his daughter because he is black. Numerous relatives and friends, their parents, and former basketball teammates and coaches testified that they all were shocked and surprised by the killings because they were so out of character for Anderson. That the killings were out of character for him was emphasized further by the Potosi Correctional Center warden's testimony that not only had Anderson adjusted well to Potosi, but he also had earned his way into the honor dormitory.

The substantial mitigating evidence in favor of Anderson is especially strong in contrast to the previous decisions by this Court finding no prejudice in giving this former MAI–CR instruction. In all three

of these prior decisions, the defendant killed someone who had done nothing wrong to him specifically, except in one case in which his ex-wife had child support deducted from his pay check.[4]

The issue raised in this appeal is emblematic of problems that have been identified with the administration of the death penalty. The provisions of Missouri's capital sentencing statute, adopted in 1977, are based on Model Penal Code provisions promulgated by the American Law Institute in 1962.[5] *Compare* sections 565.006 to 565.014, RSMo Supp.1977, *with* MODEL PENAL CODE section 210.6 (1962).[6] The institute recently decided to withdraw from the Model Penal Code its recommendations for the administration of capital punishment, stating it was doing so because of "the current intractable institutional and structural obstacles to ensuring a minimally adequate system for administering capital punishment." *See* American Law Institute, *Message from ALI Director Lance Liebman*, online at http://www.ali.org/_news/10232009.htm (all Internet materials

---

**4.** *See Storey*, 40 S.W.3d at 903, and Storey's brief at 13–16 filed in *Storey v. State*, 175 S.W.3d 116 (Mo. banc 2005) (finding no prejudice where the defendant killed his next-door neighbor after receiving a dissolution petition from his wife and the mitigating evidence showed that the defendant had suffered abuse as a child and may have had a psychological disorder); *Cole*, 71 S.W.3d at 168, and Cole's brief at 15–16 filed in *Cole v. State*, 152 S.W.3d 267 (Mo. banc 2004) (finding no prejudice where the defendant stabbed his ex-wife and her male friend after discovering that child support had been deducted from his paycheck and the mitigating evidence showed that defendant "was dependable, a good father, son, and brother, good at sports, a hard worker, and he attended church regularly"); *Tisius*, 92 S.W.3d at 758–59, and Tisius's brief at 69 filed in the same (finding no prejudice where the defendant shot and killed two unarmed officers while trying to help his friend escape from jail and the mitigating evidence showed he never had been in serious trouble

before, was only 19 years old when he committed the murders, had been rejected by his father and accepted responsibility for his actions).

**5.** "The American Law Institute is the leading independent organization in the United States producing scholarly work to clarify, modernize, and otherwise improve the law. The Institute (made up of 4000 lawyers, judges, and law professors of the highest qualifications) drafts, discusses, revises, and publishes Restatements of the Law, model statutes, and principles of law that are enormously influential in the courts and legislatures, as well as in legal scholarship and education." American Law Institute, online at http://www.ali.org/index.cfm?fuseaction=about.overview.

**6.** The two major differences were Missouri's 1977 statute contains additional aggravating factors and requires this Court's mandatory review of any death sentence.

accessed Feb. 25, 2010, and available in the clerk of Court's case file). Among other problems, the report the institute commissioned to study capital punishment highlighted the arbitrariness and discrimination that occurs as a result of jurors' confusion regarding their instructions, including the concept of mitigating evidence and the relevant standards that are to be applied to mitigating evidence. Carol S. Steiker and Jordan M. Steiker, *Report to the ALI Concerning Capital Punishment* 31–34 (2008), online at http://www.ali.org/doc/Capital%20Punishment_web.pdf.

Although some modifications have been made since Missouri adopted the Model Penal Code recommendations in 1977, Missouri's capital punishment statute continues to follow the Model Penal Code considerably. Here, even though this Court saw fit to enact a new MAI–CR verdict mechanics instruction to inform the jury about how to weigh mitigating evidence, the outdated instruction, containing no reference to mitigating evidence, was given to Anderson's jury. Yet mitigating evidence is a source of major confusion for capital juries, as stated in the institute's report.

If Missouri is going to continue to sentence defendants to capital punishment under a statute that continues to be based on the now-abandoned Model Penal Code framework, the least that the courts can do is to ensure that *all* procedural safeguards are in place. Rather than assuming that the instruction was "good enough" because it was used in previous cases, I would find prejudicial error, reverse the judgment and remand the case for a new penalty phase trial.

Although I do not think we need to determine whether the punishment was proportional to the crime because I believe the case should be remanded, I do concur with the part of Judge Breckenridge's opinion regarding proportionality review.

When considering whether a death sentence is proportional, it is, as Judge Breckenridge notes, this Court's responsibility under section 565.035.3 to look at cases in which life imprisonment was imposed as well as cases in which the death penalty was imposed.