JEFFREY W. BATES, J.-OPINION AUTHOR
Mark Peirano (Defendant) was charged as a predatory sexual offender with committing the following offenses: one count of first-degree statutory sodomy (Count 1); and five counts of first-degree child molestation (Counts 2-6). See §§ 558.018; 566.062; 566.067.[1] A jury found Defendant *525 guilty on all six counts and decided that Defendant was a predatory sexual offender. The trial court sentenced Defendant to concurrent life sentences on each count.[2]
Defendant presents one point for decision. He contends the trial court abused its discretion in admitting testimony from his aunt and sister about Defendant's "sexual abuse when they were young as propensity evidence because it was not legally relevant ... in that its probative value was substantially outweighed by the risk of unfair prejudice." We disagree and affirm.
Defendant does not contest the sufficiency of the evidence to support his convictions. "We consider the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict, and we reject all contrary evidence and inferences." State v. Campbell , 122 S.W.3d 736, 737 (Mo. App. 2004) ; see also State v. Johns , 34 S.W.3d 93, 103 (Mo. banc 2000). Viewed from that perspective, the following facts were adduced at trial.
The charges against Defendant stemmed from conduct in 2010 and 2012 involving his daughter E.B. (Victim). In 2010, when Victim was 9 or 10 years old, Defendant lived in a residence in Nixa. He was separated from Victim's mother, who lived in a nearby neighborhood. On one occasion at Defendant's residence, Defendant took Victim into the shower with him, telling her that he was going to teach her how to clean herself. Victim was old enough to clean herself and was taking showers on her own at this time. Defendant "rub[bed her] down with soap" and started touching "all of the parts" of her body, including her genitals and anus. He then told her that he wanted her to clean him. Victim told him that she did not want to do that, but he made her "clean" his penis with her hand.
In May 2012, when Victim was 11 or 12, Defendant lived in a different residence. When Victim visited Defendant, he would tell her to come into his bedroom, usually late at night, and have her remove all of her clothing except her underwear. He told her to lie on top of him while he was naked or in his underpants, explaining that "skin-to-skin contact would ... help him with his high blood pressure." Defendant would then touch her chest, buttocks, and genital area with his hands. The touching of her genital area inside of her underwear occurred "[m]ore than once." He "sometimes" touched her anus. She could feel his erect penis during these assaults, which she described as being a "bump" in his underwear.
During the 2012 Christmas break, Victim was supposed to spend some time with Defendant. Victim said she was sick, so her mother told Defendant that Victim would come in a couple of days. When Victim's mother later told Victim it was time to pack to go to Defendant's house, Victim was unusually defiant about not wanting to go, which was out of character for her. Eventually, Victim's mother said, "There's got to be something going on here. What's going on?" Victim started crying and disclosed Defendant's sexual abuse of her.
The abuse was reported to the Children's Division and the Christian County Sheriff's Department. Victim was interviewed at the Child Advocacy Center (CAC). Victim's younger brother also was interviewed. During his interview, he reported that he had been required to sit on Defendant's chest and was told by Defendant that this helped with his "blood pressure"
*526 and coughing. Victim's brother stated that this "creeped [him] out."[3]
The State also presented testimony of Defendant's prior sexually assaultive acts against young family members. Defendant's ex-wife, with whom Defendant had a daughter, gave the following testimony. In 2001, the daughter was two years old. She told the ex-wife that daughter's "owie" (her word for her private area) was hurting and that Defendant had looked at it, "kissed it and stuck his tongue on it there." Defendant admitted to the ex-wife that he had looked at their daughter's "owie" because she said that it hurt, but he denied the other acts. The ex-wife made sure their daughter was never alone with Defendant again.
Defendant's aunt (Aunt), who was approximately three years older than Defendant, testified about two incidents that occurred at family gatherings when Defendant was 14 and 15 years old, respectively. At a Fourth-of-July event, Defendant followed Aunt into a bathroom, approached her from behind and grabbed her breasts. Aunt pushed Defendant away and then avoided him for the rest of the evening. The following April, at a niece's birthday party, Defendant followed Aunt into the niece's bedroom, threw Aunt on the bed, overpowered her, and "rutted around" with his pelvis on her pelvis. He did this for a minute or two and then stopped when it appeared he had a "release" of sexual gratification. Aunt told her best friend and her sister about the April incident, but it was not reported to anyone else.
Defendant's sister (Sister) gave the following testimony. She was 15 months younger than Defendant. He started sexually assaulting Sister when she was 9 years old and did so "all the time" until she was 17. He regularly touched her chest both over and under her clothes. On one occasion, he asked to touch her chest to help him "get warm" with her "body heat" after he had his wisdom teeth removed. Also, he often bent her over a freezer in the basement and would grind his crotch against her buttocks. On an occasion when Sister was 9 years old, Defendant asked to watch her take a shower and then he went into the shower with her. He told her to wash her crotch so he could watch her. On another occasion when Sister was either in junior high or early high school, Defendant walked in on her in the kitchen with his erect penis in his hand and "made eyes at" her. Another time, he picked up her feet and put them against his penis. He also would rub his crotch against her hand in locations where other people were present. She told her parents and her uncle about Defendant's abuse, but no one did anything to make it stop.
The defense presented at trial was that the allegations made against Defendant were false. To support that defense, Defendant presented testimony from himself and several other witnesses. The jury found Defendant guilty on all charges, and this appeal followed.
Defendant's single point challenges admission of testimony from Aunt and Sister about Defendant's sexual abuse of them when they were young.[4] A trial *527 court's ruling on the admissibility of evidence is reviewed for abuse of discretion. State v. Blurton , 484 S.W.3d 758, 769 (Mo. banc 2016). The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. Id. ; State v. Winfrey , 337 S.W.3d 1, 5 (Mo. banc 2011).
To be admissible, evidence must be both logically and legally relevant. Blurton , 484 S.W.3d at 777 ; State v. Anderson , 306 S.W.3d 529, 538 (Mo. banc 2010). Evidence is logically relevant if it tends to make the existence of a material fact more or less probable. Anderson , 306 S.W.3d at 538. Logically relevant evidence also must be legally relevant to be admissible. Id. "Legal relevance weighs the probative value of the evidence against its costs-unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." Id. If the prejudicial effect of the logically relevant evidence outweighs its probative value, the evidence should be excluded. Id.
Generally, proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he or she is on trial. State v. Vorhees , 248 S.W.3d 585, 587 (Mo. banc 2008). There are, however, "exceptions under which otherwise inadmissible evidence may be admitted." State v. Primm , 347 S.W.3d 66, 70 (Mo. banc 2011).[5] The exception at issue here is part of our state's Constitution:
[I]n prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged.
MO. CONST. art. I, § 18(c). The amendment further states that "[t]he court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." Id.
According to Defendant, the "propensity evidence" in this case "was not legally relevant ... in that its probative value was substantially outweighed by the risk of unfair prejudice." Defendant argues that the "testimony should have been excluded because its probative value was significantly decreased by the fact that the conduct was too remote in time, having occurred over [20] years before the charged incidents, *528 when [he] was a juvenile[.]" Based on this premise, Defendant contends the trial court abused its discretion in admitting the challenged testimony. We disagree.
The admissibility of propensity evidence was addressed by our Supreme Court in State v. Prince , 534 S.W.3d 813 (Mo. banc 2017). In Prince , the defendant argued that the trial court erred in admitting the propensity evidence because: (1) it was too remote in time; and (2) the evidence involved conduct that occurred when the defendant was a juvenile. Our Supreme Court decided that neither of those factors kept the propensity evidence there from being both logically and legally relevant. Id. at 819-21.
With respect to logical relevance, the Court explained that remote acts are logically relevant because "remoteness in time ordinarily affects only the weight of the evidence," not admissibility. Id. at 819. "The passage of time alone will not render evidence inadmissible due to its remoteness." Id. The Court also explained that acts committed by a juvenile, "whether classified as criminal or delinquent, [are] criminal acts with legal consequences" and therefore, evidence of those acts is within the amendment's definition of "prior criminal acts, whether charged or uncharged...." Id. Here, Defendant's prior criminal sexual acts against Aunt and Sister fall directly within the scope of the amendment, and Defendant does not argue otherwise.
After addressing logical relevance, the Prince court next evaluated the legal relevance of remote juvenile acts. Id. at 819-20 (noting whether evidence "is unduly prejudicial in light of its probative value ... pertains to legal relevance and not logical relevance"). Prince was convicted of the murder, forcible sodomy and abuse of a 4-month-old victim. Id. at 816. The trial court admitted evidence from a juvenile adjudication showing that Prince had committed an offense involving manual-to-genital contact with his 6-year-old niece. Id. Prince was 15 years old when that adjudication occurred, and the act occurred nine years prior to the charged offense. Id.
In analyzing legal relevance, the Court recognized that the similarity between the prior and the charged conduct generally outweighs concerns about the remoteness of the prior acts. Id. at 820. As the Court explained, "when the conduct in question is similar, a nine-year gap in time is not too remote to preclude admissibility." To support that proposition, the Court cited with approval several cases from other jurisdictions in which gaps between prior and charged conduct of up to 30 years were not too remote to be legally relevant. Id. ; see, e.g. , United States v. Emmert , 825 F.3d 906, 909 (8th Cir. 2016) (20-year gap); United States v. Meacham , 115 F.3d 1488, 1494-95 (10th Cir. 1997) (30-year gap); State v. McGuire , 135 Idaho 535, 20 P.3d 719, 723 (App. 2001) (23-year gap). Because "the conduct at issue need only be similar-not identical" to be admissible, the Prince court concluded that the earlier acts were sufficiently similar to the charged acts as they were sexual acts directed at young, female family members, to whom Defendant had access, since the earlier victim was a niece and the charged victim was a child Defendant identified as his daughter. Prince , 534 S.W.3d at 820 (citation omitted). Thus, the prior conduct was not too remote and, while not identical, was "similar enough in nature to be legally relevant." Id. at 821.
Prince is controlling and dispositive of this case. Like Prince , Defendant targeted young females to whom he had access because of familial relationships. Moreover, the prior and charged conduct of Defendant in the case at bar is even more *529 similar than in Prince because: (1) Defendant's abuse of both Sister and Victim were reported to have started around the same age, 9 years old; (2) Defendant repeatedly grabbed and fondled the chest/breasts of all three victims, and each victim described conduct consistent with Defendant grinding his penis against them; and (3) Defendant's conduct with Sister and Victim also included sexual activity involving the shower, and bizarre pseudo-medical explanations as to why he needed to touch victims' skin to help "get warm" after oral surgery or help with his "blood pressure." Additionally, Sister's testimony in particular about her early abuse corroborated Victim's testimony, precisely as envisioned by the amendment. MO. CONST. art. I, § 18(c) (prior criminal acts "admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime").
While the gap in time here between the prior acts versus the charged acts is greater than in Prince- 22-23 years with Aunt and 19-27 years with Sister-these acts were still within the range of the cases cited with approval in Prince . Id. at 820. Furthermore, the fact that Defendant's conduct with Sister was ongoing over a course of eight years tended to show that the prior actions were evidence of an ongoing propensity, rather than an isolated incident. Finally, there also was evidence that in 2001, approximately ten years after Defendant stopped molesting Sister and eight years before molesting Victim, Defendant molested another daughter when she was two years old. After that incident, Defendant was never left alone again with the child. In sum, the testimony from Aunt and Sister was admissible to prove Defendant's propensity to sexually assault young female family members whenever he had unfettered access to them. As in Prince , while "admission of [the challenged evidence] may have been prejudicial to [the] defense, its probative value was not substantially outweighed by the danger of unfair prejudice." Id. at 821 (emphasis in original).[6] Accordingly, the trial court did not abuse its discretion in admitting propensity testimony from Aunt and Sister. Defendant's point is denied, and the judgment of the trial court is affirmed.
NANCY STEFFEN RAHMEYER, C.J./P.J.-CONCUR
WILLIAM W. FRANCIS, JR., J.-CONCUR

All statutory references are to RSMo Cum. Supp. (2013).

Prior to trial, the court had found that Defendant was a persistent misdemeanor offender. Based on that finding, the jury was not involved in sentencing. See § 558.016.5; State v. Manley , 223 S.W.3d 887, 893 (Mo. App. 2007).

Both Victim and her brother testified at trial. Recordings of their CAC interviews, State Exhibits 2 and 4 respectively, were received in evidence and viewed by the jury.

Prior to trial, the State filed a "Motion to Admit Propensity Evidence" as authorized by Mo. Const. art. I, § 18(c). The State sought the admission of testimony from Aunt and Sister to prove Defendant's propensity to commit sexual offenses against young family members. Defendant filed a motion to exclude this propensity evidence. He argued that the admission of such evidence would be more prejudicial than probative. After conducting a hearing on the issue, the court decided to exclude one incident involving Aunt that occurred when Defendant was 12 years of age. The court ruled that the remainder of Aunt's proposed testimony was admissible. The court decided that Sister's proposed testimony also was admissible. Before Aunt and Sister testified at trial, the court granted Defendant's request for a continuing objection concerning "events that occurred multi-decades ago[.]" The same claim of error was included in Defendant's motion for new trial, thereby preserving the issue for appeal. See Rule 29.11(d); State v. Culpepper , 505 S.W.3d 819, 831 (Mo. App. 2016) ; see also State v. Hood , 521 S.W.3d 680, 688 (Mo. App. 2017).

Evidence may be admissible if it tends to establish: "(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with commission of the crime on trial." Primm , 347 S.W.3d at 70. Further, evidence "of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged may be admissible 'to present a complete and coherent picture of the events that transpired.' " Id. (citation omitted).

Our Supreme Court also observed that the amendment's "plain language indicates the circuit court retains substantial discretion in admitting or excluding this evidence even if there is a danger of some prejudice." Prince , 534 S.W.3d at 821.