

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110268 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| v. | ) | Cause No. 17AB-CR02168 |
| | ) | |
| | ) | Honorable Craig E. Hellmann |
| | ) | |
| TODD R. SHEPARD, | ) | |
| | ) | |
| Appellant. | ) | Filed: February 28, 2023 |

## I. Introduction

Todd Shepard appeals the judgment entered after a jury trial on one count of statutory rape. On appeal, Shepard challenges the admission of propensity evidence under Article I, §18(c) of the Missouri Constitution. We affirm.

## II. Background

Shepard was charged with one count of statutory rape for having sexual intercourse with E.F. when she was fifteen years old. Shepard was forty-three years old at the time. The crime occurred between June and November of 2016. Before trial, the State filed a notice of its intent to introduce evidence of prior uncharged criminal acts to show Shepard's propensity to commit the charged crime. Article I, §18(c) of the Missouri Constitution authorizes the admission of such

evidence in "prosecutions for crimes of a sexual nature involving a victim under eighteen years of age." "The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." MO. CONST. art. I, §18(c).

The State asserted the propensity evidence would be as follows: L.S. would testify that Shepard provided her with methamphetamine and requested she provide him with nude photographs and M.W. would testify that Shepard showed her pornography and masturbated in her presence. After a pretrial hearing on the matter, the circuit court entered an order finding that the proposed evidence was "logically and legally relevant." At the beginning of trial, Shepard filed a written motion in limine to exclude the propensity testimony, arguing that the probative value of such evidence was substantially outweighed by the danger of unfair prejudice. That motion was denied.

L.S. was the State's first witness at trial. She was eighteen at the time she testified. L.S. said that Shepard was a friend of her mother. L.S. saw him as a "father-figure," and she said he was a caretaker for her at times because her father was in prison and her mom was often not around. L.S. testified that she used methamphetamine with Shepard between ten and twenty times. Shepard gave her the drugs free of charge. Without objection from the defense, L.S. testified that Shepard asked her to send him partially unclothed photographs of herself, indicating he wanted pictures of the "bottom half of the body." L.S., who was then only thirteen years old, sent pictures of herself in her underwear to Shepard.

L.S. testified that one day in the late summer or early fall of 2016, when she was still thirteen, she and her friend E.F. went to the restaurant where Shepard worked. The girls ate and then used methamphetamine that Shepard left for them in the bathroom. After they left the restaurant, L.S. and E.F. contacted Shepard to pick them up. Shepard picked the girls up and

brought them to his apartment. No one else was there. L.S. testified that she and E.F. "did more drugs" provided by Shepard.

Less than an hour after being at the apartment, L.S. saw Shepard and E.F. go into a bedroom and close the door. L.S. was in the bathroom with the door open because it was hot and there was no exhaust fan. L.S. testified that from the bathroom she could hear "[s]ome banging on the wall or – and also maybe like someone that was breathing heaving like a – I heard maybe a giggle, and like a – I don't know. Like, a grunting maybe." When E.F. and Shepard came out of the bedroom, Shepard said to the girls: "This never happened." He then drove them to their friend's house. L.S. testified that E.F. later told her that she and Shepard had sex in the bedroom.

On cross-examination, the defense questioned L.S. about prior inconsistent statements she made to police and during her deposition. L.S. admitted at trial that she had lied about some things—including whether she sent Shepard pictures of herself—during the police interviews because her mom and aunt were present. L.S. was also cross-examined regarding the details of what she and E.F. did before, during, and after the charged incident and what she saw and heard while at Shepard's apartment.

E.F. was twenty years old at the time she testified at trial. She said L.S. introduced her to Shepard in the summer of 2016, when E.F. was fifteen years old. Shepard sometimes picked E.F. up from school, pretending to be her father. On the date of the charged incident, E.F. and L.S. were at the restaurant where Shepard worked. E.F. testified that Shepard went into the women's bathroom and then came out and told the girls that he had left lines of methamphetamine for them on the sink. E.F. and L.S. went into the bathroom and used the drugs. E.F. said that was the first time she had used methamphetamine. She and L.S. then went to Shepard's apartment, where he gave them more methamphetamine, which made E.F. feel like a "zombie" and "kind of zoned out

3

in la-la land." At some point, E.F. went into the bedroom with Shepard. He put his fingers and then his penis in her vagina. She said the intercourse lasted five to ten minutes. Afterward, they all left the apartment, and Shepard dropped her and L.S. at a friend's house. E.F. remained awake for the following five days. At some point thereafter and before E.F. talked to the police, Shepard called E.F. and told her to "delete everything" and act like she did not know him.

On cross-examination, the defense questioned E.F. about prior inconsistent statements she made to police and during her deposition. She was also cross-examined about the details of the incident, many of which E.F. could not recall.

Detective James Briggs testified that in October of 2016 he was contacted about a disclosure M.W. had made "in reference to sexual contact with" Shepard. Investigation of that disclosure revealed information about "some encounters" Shepard had with L.S. when she was thirteen years old, which led to investigating the incident with E.F. During these investigations, Shepard consented to a search of his bedroom, which revealed methamphetamine paraphernalia and several pairs of female underwear in various sizes (including extra small) folded neatly at the bottom of his dresser drawer, "hidden" underneath Shepard's own clothes.[1] Shepard told the detective the underwear belonged to L.S. and her mom and it had gotten mixed up with his laundry. At trial, Shepard claimed the underwear belonged to a niece who had recently moved in and was keeping her clothes in the dresser in his bedroom.

Police also conducted a search of Shepard's phone, which revealed the following text message sent to E.F. in November of 2016: "I sent some before, is the only reason I asked you hardass. I just love that body, and I want to see it." Immediately after another message to E.F., the

---

[1] Defense counsel's initial objection to Detective Briggs testifying about the underwear during his direct examination in the State's case in chief was sustained. But then Shepard testified about it himself, without objection, during the State's cross-examination of him, after which Detective Briggs was recalled by the State in rebuttal to elaborate on the matter, also without objection.

phone shows a "series of pornographic website visits." Shepard testified that he did not recall sending that message, but admitted he had texted with E.F. at other times.

On cross-examination, Detective Briggs was asked by the defense about Shepard's request for photographs from L.S. The detective testified that L.S. told him Shepard asked her for nude photographs, but she sent only "booty pics" in which she was not actually nude. The detective also testified on cross-examination that L.S. told him she heard Shepard and E.F. having sex and that, afterward, Shepard said "this did not happen." Detective Briggs also said that during his interview with E.F., she began crying and said she had sexual intercourse with Shepard at his apartment.

The State then called M.W., who was twenty-three years old at the time of trial. The defense objected for the reasons stated in Shepard's motion in limine and asked for the objection to be continuing. The circuit court denied the objection, but granted counsel a running objection throughout the testimony. M.W. testified that Shepard dated her mom and lived with them for about ten years until about 2016. When M.W. was thirteen years old, Shepard said he wanted to "prepare [M.W.] for sex so that [she] knew what to do for [her] first time." She testified that Shepard watched pornography in front of her approximately ten times. These incidents occurred sometime between late 2011 and late 2014, when M.W. was between thirteen and fifteen years old. M.W. testified that Shepard had her "come back into the bedroom, and he would shut and lock the door, and then put a pornography DVD in the DVD player and proceeded to masturbate while he watched porn while [she] was in the room." She testified that she could see Shepard's penis and saw him ejaculate on a few occasions. M.W. testified that Shepard also asked her to touch herself with a vibrating rubber toy, which she did not do. M.W. was not cross-examined.

Shepard testified on his own behalf. He stated that on the day of the charged incident, L.S. and E.F. asked to come to his apartment after eating at the restaurant where he worked. Shepard

5

claimed his mother was home when the three of them arrived. He testified that he told his mother he was home and had to go back to work later and then went into his bedroom to take a nap. Shepard said he had no idea what L.S. and E.F. were doing while he slept. Shepard claimed his mother was no longer home when he woke up; his mother testified that she went into his room and woke him up from his nap before she left. Shepard denied giving L.S. and E.F. methamphetamine at any point and denied having sex with E.F. He had no explanation for why the girls would say otherwise.

After the close of evidence, the State presented its closing argument. Among other evidence, the prosecution mentioned that M.K. "testified about an incident, which corroborates the victim's testimony." The prosecution then told the jury it would receive an instruction that M.K.'s testimony could be used for the purpose of corroboration and to demonstrate Shepard's propensity to commit the charged crime. Shepard was also, at one point, described as a forty-three-year-old man "hanging out" with thirteen-year-old and fifteen-year-old children. There was no mention of Shepard's request for nude photographs of L.S. by the State in its closing argument. The defense read a portion of the propensity instruction during its argument, pointing out that even if the jury believed Shepard gave L.S. and E.F. methamphetamine, that did not mean Shepard was a "rapist" and that he was not charged with giving drugs to the girls or with sending texts "asking for possibly nude pictures." The instruction permits the jury to use that evidence "for corroboration," the defense stated, but argued that much of the evidence came from witnesses who were inconsistent, lying, did not recall, or did not know. In the State's rebuttal, the prosecution started to address "the propensity evidence" but then moved on when the defense objected.

The jury was instructed on propensity evidence as follows:

The defendant is on trial only for the offense charged. You may not find the defendant guilty only because you believe he may have been involved in or committed other offenses or bad acts in the past.

If you find and believe from the evidence that the defendant previously was involved in or committed other offenses or bad acts, you may consider such evidence only for the purposes stated in this instruction.

If you find and believe from the evidence that the defendant previously committed other criminal acts of providing drugs to a minor, asking a minor for nude photographs, watching pornography with a minor and masturbating in front of a minor, you may consider that evidence for the purpose of corroborating the victim's testimony and demonstrating the defendant's propensity to commit the offense for which he is charged.

The jury deliberated for forty-five minutes and returned a guilty verdict. Shepard was sentenced to seven years in prison.

This appeal follows.

### III. Discussion

In his first two points on appeal, Shepard challenges the admission of (1) M.W.'s testimony that Shepard watched pornography and masturbated in her presence and (2) L.S.'s testimony that Shepard requested nude photos of her. In his third point, Shepard asserts plain error in the admission of his prior conduct with L.S. and M.W. "and related extraneous and collateral evidence."

***Preservation and Standards of Review***

Before reaching the merits of these points, we must first determine the proper standard of review for each based on whether the claim of error was preserved. As recently reiterated by the Supreme Court of Missouri,

Pretrial orders regarding the admissibility of evidence are interlocutory, unreviewable, and subject to change. Because a pretrial ruling is interlocutory, evidence produced at trial may prompt the circuit court to alter its pretrial ruling. Merely objecting to the admission of evidence in a pretrial motion is insufficient to preserve any trial error for appeal. To preserve a pretrial objection, a party must renew the objection in court and make a record that identifies not only the action to

which the party is objecting but also the legal basis for the objection. Only an objection made timely *at trial* will preserve an issue for appeal.

*State v. Minor*, 648 S.W.3d 721, 729 (Mo. banc 2022) (internal quotation marks, citations, and punctuation omitted; emphasis original).[2] The only objection made during trial and contemporaneously at the time the evidence was introduced was to M.W.'s testimony. There was no objection made when L.S. testified nor when "related extraneous and collateral evidence" was introduced. Therefore, Point I is the only claim of error preserved for review and will be reviewed for an abuse of discretion. *See State v. Williams*, 548 S.W.3d 275, 287 (Mo. banc 2018).

Nevertheless, Shepard argues that he was granted a continuing objection to all propensity evidence at the outset of trial. The record refutes that assertion. On the morning of trial, the circuit court took up Shepard's motion in limine to exclude the propensity testimony of M.W. and L.S. During the discussion of that motion, the defense told the circuit court that "if the motion is going to be denied that prior to either of the propensity witnesses testifying in part as a propensity witness that I will approach the bench and ask – make an objection and make that objection continuing." The court denied the motion in limine and stated it "will allow [counsel] to make a continuing objection . . . [o]nce it's made on the record."

This was not an objection. At best, it was the announcement of a plan to object in the future. And the circuit court's response was not a ruling. Instead, the court merely indicated that it would allow a continuing objection to particularized evidence once the objection was actually made. As

---

[2] As pointed out by the concurring opinion in *Minor*, the interlocutory nature of any pretrial ruling is compounded in the context of propensity evidence, the admissibility of which is "subject to change at any point during proceedings in the circuit court" under the "probative-versus-prejudicial balancing test." *Id*. at 742 (J. Powell concurring). Because of that balancing test, asking for a *continuing* objection to propensity evidence, before or during trial, has "pitfalls." *Id*. As the concurring opinion in *Minor* warns, "it is futile to use a continuing objection to preclude the admission of propensity evidence because the underlying objection involves balancing the probative value of *accumulating* evidence against its prejudicial effect." *Id*. (emphasis added). Defendants must monitor "the *quantum* of propensity evidence—not merely its inherently prejudicial nature" as it is introduced at trial and object "when the scales tip and the danger of unfair prejudice substantially outweighs the probative value" such that "the continued onslaught of the evidence is inadmissible." *Id*. at 743 (emphasis original).

a result, the claims of error in Points II and III are not preserved and can be reviewed, if at all, only for plain error. *See Minor*, 648 S.W.3d at 730-31.

### *Point I—Admission of M.W.'s Testimony*

In his first point, Shepard contends it was error to admit M.W.'s testimony that Shepard watched pornography and masturbated in her presence when she was a minor. Under the abuse of discretion standard, the circuit court's decision to admit M.W.'s testimony will be affirmed unless it is clearly against the logic of the circumstances. *See Williams*, 548 S.W.3d at 287. If reasonable persons could disagree about the propriety of admitting propensity evidence under this constitutional provision, then it cannot be said that the circuit court abused its discretion. *Id.*

Article I, §18(c)—added to the Missouri Constitution by the electorate in 2014—provides:

> Notwithstanding the provisions of sections 17 and 18(a) of this article to the contrary, in prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

The plain language of this provision allows the circuit court to retain "substantial discretion in admitting or excluding this evidence even if there is a danger of some prejudice." *State v. Prince*, 534 S.W.3d 813, 821 (Mo. banc 2017). That is, the probative value of the evidence must not simply be outweighed by, but *substantially* outweighed by, the prejudicial effect of the evidence. *See id.*; *see also State v. Matson*, 526 S.W.3d 156, 159 (Mo. App. W.D. 2017).

"[H]ow much and what kind of probative value particular propensity evidence may have, the nature and extent of the danger of unfair prejudice presented by that evidence, and whether the former is substantially outweighed by the latter, are intensely case-specific questions." *Williams*, 548 S.W.3d at 288. In *Williams*, the Court set out factors that *illustrate* the legal analysis required

by the constitutional provision, but cautioned that the relevance of these factors will vary depending on the case, "as will the weight to be afforded any one factor in particular." *Id*. The factors discussed in *Williams* "are not elements" and "are not to be interpreted as necessarily applicable, exclusively or inclusively, in the context of any particular case." *State v. Burge*, 596 S.W.3d 657, 664, n.12 (Mo. App. S.D. 2020). Rather, to the extent any factor is relevant in a particular case, it is but one consideration in the overall probative-versus-prejudicial balancing test. *See, e.g., State v. Davison*, 636 S.W.3d 588, 595 (Mo. App. W.D. 2021).

*Probative Value*

"Before propensity evidence can be said to have any probative value, it must be sufficient for the jury to conclude the defendant actually committed the prior criminal act." *Williams*, 548 S.W.3d at 288. The evidence also "must tend to show the defendant actually had a propensity to commit the charged crime[.]" *Id*. at 289. To make this determination, courts look to the similarity between the prior and the charged conduct and the amount of time between the two. *See id*.; *see also, e.g., State v. Brown*, 596 S.W.3d 193, 208-09 (Mo. App. W.D. 2020) (finding evidence probative, despite significant twenty-one-year gap in time, where conduct, age of victims, and surrounding circumstances were very similar). When determining probative value, courts may also consider the State's "need" for the propensity evidence to prove the case. *Williams*, 548 S.W.3d at 289. The need for, and corresponding probative value of, propensity evidence is greater when the State's case depends only on the victim's testimony and that victim's credibility is attacked by the defense. *Brown*, 596 S.W.3d at 209 (citing *Williams*, 548 S.W.3d at 290).

Shepard concedes the evidence was sufficient for the jury to conclude that the prior incident with M.W. occurred. But he contends her testimony had minimal probative value because it involved substantially different conduct than the charged offense. While we acknowledge that the

10

prior uncharged conduct differs in its end result from the charged offense, the conduct was sufficiently similar to allow a jury to find Shepard had a propensity toward sexual crimes against underage girls. And the incidents with M.W. occurred as recently as two years before the incidents with E.F. The testimony demonstrated that Shepard repeatedly engaged in inappropriate sexual conduct with one teenage girl he knew in the years leading up to raping another teenage girl he knew. In this situation, great weight should be afforded to the similarities in the ages of M.W. and E.F. and the fact they were not strangers to Shepard because it tends to show an ongoing propensity to engage in the charged crime. *See State v. Peirano*, 540 S.W.3d 523, 529 (Mo. App. S.D. 2018) ("[T]he fact that Defendant's conduct with Sister was ongoing over a course of eight years tended to show that the prior actions were evidence of an ongoing propensity, rather than an isolated incident.")

Shepard also contends that the State did not need M.W.'s testimony to prove its case. The evidentiary challenges facing the State in this case were perhaps not as daunting as in other child sex cases. The victim, E.F., was an adult at the time she testified at trial, and while no one else saw the charged conduct occur, L.S. could at least indirectly corroborate the victim's testimony with what she heard. But still the case rested entirely on the testimony of the victim, who testified that significant drug use on the day of the crime affected her memory, and the testimony of one "earwitness." There was no physical evidence to corroborate their testimony, and both girls' credibility was attacked with extensive cross-examination by the defense. M.W.'s testimony may not have been "absolutely necessary" to the State's case, but that is not the standard: it need only be "helpful or practically necessary." *Williams*, 548 S.W.3d at 289 (internal citation and emphasis omitted); *see also Brown*, 596 S.W.3d at 209.

11

*Danger of Unfair Prejudice*

Several factors may bear on a court's analysis of the prejudicial effect of propensity evidence: whether the jury could infer the defendant was punished for his past criminal acts, how the State goes about proving the prior act at trial, whether the charged crime is overshadowed by evidence of the prior act, and the manner in which the State uses the prior act at trial. *Williams*, 548 S.W.3d at 290-91. Again, these are not necessarily the only factors that might be relevant in a given case, nor is any one of them necessarily controlling over the others. *See Burge*, 596 S.W.3d at 664, n.12; *Davison*, 636 S.W.3d at 595.

First, we consider whether the jury could infer Shepard was punished for his prior conduct with M.W. If the jury believes the defendant has thus far escaped punishment, then "it may be inclined to convict merely to punish the defendant for past criminal acts rather than for the crime charged." *Williams,* 548 S.W.3d at 290. As Shepard contends, it would have been fair for the jury in this case to infer that Shepard had not yet been punished for his conduct with M.W. But it would have been equally fair for the jury to infer that he would not escape punishment in the future. Because the M.W. incidents were disclosed at the outset of the investigation into the charged incident, the jury could have believed that charges regarding Shepard's conduct with M.W. were still forthcoming. Even if the jury was concerned about this, the risk that it was inclined to convict Shepard for past conduct *rather* than for the crime charged—disobeying the court's explicit instruction to the contrary—is low.

Next, we look at how the State went about proving the prior act at trial. *See id*. The incident with M.W. was an uncharged act, and therefore, unlike a prior conviction that can be proven with a dispassionate exhibit or stipulation, the State here had to rely on M.W.'s live testimony at trial. Live testimony regarding prior bad acts is not *per se* unfairly prejudicial, but when it is "graphic

12

…, overly detailed, and not dispassionate" the danger of unfair prejudice increases. *See Brown*, 596 S.W.3d at 210.[3] Here, M.W.'s testimony was live, but it was brief—encompassing only a few pages of the transcript—and there is nothing in the record to suggest M.W. was emotional during it. She was an adult at the time of trial and discussed only those details necessary to relate that Shepard watched pornography and masturbated in her presence while she was a minor. Like any description of sexual misconduct, the testimony included the discussion of private body parts and functions. But, as Shepard himself characterizes it, M.W.'s description of those details was "clinical."

We turn next to whether the evidence of Shepard's prior criminal act with M.W. eclipsed or overshadowed the evidence of the charged crime. *See Williams*, 548 S.W.3d at 290. Though evidence of any prior act of sexual misconduct involving a minor is "highly prejudicial in the abstract," if in reality the evidence of the prior act is less alarming than the evidence of the charged crime, there is less danger the former will overshadow the latter and unfairly prejudice the defendant. *See id.*; *see also Brown*, 596 S.W.3d at 210. Contrary to Shepard's insistence, the evidence of the incidents with M.W. was not "substantially more detailed" than the evidence regarding the charged crime. M.W.'s brief and not elaborately-detailed testimony was far less disturbing and did not eclipse the extensive testimony about how Shepard provided E.F. methamphetamine and then had sex with her.

Finally, we consider the manner in which the State used the evidence at trial. *See Williams*, 548 S.W.3d at 291. When the prosecution spends undue time emphasizing the prior conduct or invites the jury to convict because the defendant is a bad person rather than because he committed the charged crime, the danger of unfair prejudice is "untenable." *Id.*; *see also Brown*, 596 S.W.3d

---

[3] Having to rely on live testimony is one of the risks of using unadjudicated propensity evidence noted by the concurring opinion in *Minor*, *infra*, discussed further in Point III.

at 212 (finding unfair prejudice where prosecution repeatedly characterized defendant as, and urged jury to convict him because he was a pedophile based solely on propensity evidence not a diagnosis of pedophilia). Nothing of the sort occurred in this case. The State devoted comparably little time to the incidents with M.W. and never suggested Shepard should be convicted of statutory rape of E.F. because of his prior conduct with M.W., because he was a bad person, or for any reason other than the belief that he committed the charged crime. The only argument made by the prosecution regarding M.W.'s testimony was brief and properly limited to the context in which the court would instruct the jury it could be used. The State's limited and proper use of the propensity evidence lowers the danger of unfair prejudice. *See Williams*, 548 S.W.3d at 291.

In sum, Shepard has failed to demonstrate that the danger of unfair prejudice of M.W.'s testimony substantially outweighed the probative value of it. We find no abuse of discretion in the admission of M.W.'s testimony.

Point I is denied.

### *Points II and III—Unpreserved Errors*

Unpreserved claims of error regarding the admission of propensity evidence pursuant to Article I, §18(c) can be reviewed, if at all, only for plain error. *Minor*, 648 S.W.3d at 731 (citing Rule 30.20). Plain error review is a *discretionary* two-step process:

> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

*Id.* (internal citation omitted). To obtain a new trial based on a plain error, the appellant must show the error was outcome determinative. *Id.* The plain error rule is to be used sparingly and only when the defendant meets his burden of demonstrating manifest injustice; otherwise, appellate courts

14

should decline to engage in plain error review. *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020). When a defendant "does not request plain error review or present an argument supporting the claim of error, he is unable to meet his burden of demonstrating a manifest injustice occurred." *Petersen v. State*, 2022 WL 17129167, at *3 (Mo. banc November 22, 2022).

In his second point, Shepard contends it was error to admit L.S.'s testimony that Shepard asked her for nude photographs because it was of minimal probative value and that value was substantially outweighed by the danger of unfair prejudice. As discussed above, this error was not preserved, and Shepard neither asks for plain error review of this point nor presents any argument demonstrating how admission of this *particular* testimony resulted in a manifest injustice. We decline to *sua sponte* engage in plain error review of this point. *See id.* In any event, as the discussion below reveals, we find no manifest injustice from the admission of the *entirety* of the propensity evidence.

Point II is denied.

In his third point, Shepard seeks plain error review of the circuit court's admission of the "prior bad acts against L.S. and M.W., and the related extraneous and collateral evidence." Without citation to the record, Shepard argues that L.S.'s and M.W.'s testimony opened the "flood gates to the other evidence that followed." The only specific "other evidence" identified is testimony suggesting that Shepard called M.W.'s father shortly before trial and the evidence that Shepard had girl-sized underwear hidden in his bedroom. Shepard contends that manifest injustice resulted from the admission of the "total package of propensity evidence" in this case.

Shepard's argument in this point relies heavily on the concurring opinion in *Minor*. While that concurring opinion notes the significant risks associated with using unadjudicated prior conduct to prove propensity, those risks simply are not present here.

15

There are two "inherent" problems associated with the use of uncharged prior misconduct to prove propensity, according to the *Minor* concurrence: (1) the need to use live testimony instead of an emotionless exhibit evincing the existence of a prior conviction and (2) the need for "a trial within the trial" to demonstrate that the unadjudicated act occurred. 648 S.W.3d. at 739 (J. Powell concurring). "[I]nevitable unfair prejudice" results: the emotional personal testimony about a traumatic evident increases the "already inherently prejudicial nature" of propensity evidence and the "mountain of evidence" necessary to demonstrate—and challenge—whether the prior uncharged act occurred creates prejudicial confusion that is likely to exceed the probative value of that evidence. *Id*. at 741. Therefore, the concurrence concludes, unadjudicated prior crimes will rarely be admissible under the probative-versus-prejudicial balancing test in Article I, §18(c). *Id*. "Do not take the proverbial rabbit hole," the concurring opinion warns circuit courts. *Id*. "The Wonderland on the other side consists of an endless spiral of extrinsic, collateral, and unfairly prejudicial evidence that undoubtedly will result in confusion and unfair prejudice, requiring a maddening retrial of a child sex case." *Id*.

Although the prior acts in this case were unadjudicated, Shepard fails to demonstrate how any of the above risks actually materialized or amounted to a manifest injustice here. L.S.'s and M.W.'s testimony about the prior acts was straightforward and did not require additional mountains of extraneous evidence and mini-trials to prove those acts actually occurred. Their testimony was not emotional and was contained to a clinical recounting of only those details required to establish that the acts happened. To the extent M.W.'s testimony led to the admission of collateral evidence that Shepard called M.W.'s father before trial, that matter was limited to a few lines of testimony and the State's brief suggestion that Shepard was trying to prevent M.W. from testifying. Likewise, the evidence regarding the underwear found in Shepard's room—which

does not appear to have been admitted directly *because of* the testimony regarding his prior conduct with L.S. or M.W.—was also fairly limited and not a major point in the State's argument.

Throughout the presentation of evidence and arguments at trial, the focus remained squarely on whether the charged conduct occurred. Discussion of other matters did not spin out of control and become an unfairly prejudicial sideshow. Nothing in our review of the record or Shepard's arguments evinces any confusion resulting from admission of the propensity evidence in this case, much less a level of confusion that resulted in a manifest injustice.

The risks discussed in the *Minor* concurring opinion therein may well be inherent to unadjudicated prior crimes, but even that opinion stops short of saying they are *per se* inadmissible. Rather than illustrate the Wonderland of confusion and unfair prejudice that may result from the admission of unadjudicated prior crimes, Shepard's case illustrates how such evidence can be used *without* falling down that rabbit hole.

Finally, we note that Shepard fails to demonstrate that the outcome of this trial would have been different had the propensity evidence not been admitted. He does not challenge the admission of any of the other evidence at trial that established the elements of the charged crime. Shepard claims only that there was not overwhelming evidence of guilt, relying on a handful of discrepancies in E.F.'s and L.S.'s testimony about details surrounding the charged incident, such as whether they both did drugs at the restaurant. While there may have been inconsistencies in the girls' accounts of the details leading up to it, E.F. maintained unequivocally—from the time of her police interview through trial—that Shepard had sexual intercourse with her. Though her drug-induced state at the time may have affected her memory of other inconsequential details, E.F. was clear about the facts that constituted the crime of statutory rape. *See Brown*, 596 S.W.3d at 213 (finding that despite inconsistency as to details surrounding the sexual acts, testimony about the

17

acts themselves was clear and supported convictions). There was also evidence that Shepard tried to prevent anyone from finding out that he had sex with a minor. This includes calling E.F. and telling her to act like she did not know him and evinces consciousness of guilt. *See id* at 213-14. In addition to the evidence supporting the jury's verdict, the jury was instructed that Shepard was on trial "only for the offense charged" and that it could not find him guilty of that crime only on the belief that he "committed other offenses or bad acts in the past." We must presume that the jury followed that instruction and convicted Shepard of statutory rape only because it believed beyond a reasonable doubt that Shepard had sex with E.F. *See Minor*, 648 S.W.3d at 731–32 (finding no plain error, relying solely on the instruction to conclude that defendant had not established manifest injustice).

Point III is denied.

## IV. Conclusion

The judgment is affirmed.

John P. Torbitzky, J.

Gary M. Gaertner, Jr., P.J., and
Cristian M. Stevens, J., concur.

18