

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
)
          Respondent, )
) No. SD 37577
    v. )
) **Filed: August 30, 2023**
JERRY M. PIERCE, )
)
          Appellant. )

APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

Honorable Robert N. Mayer, Judge

**AFFIRMED AND REMANDED WITH INSTRUCTIONS**

Jerry Michael Pierce appeals his convictions by a jury of one count of child molestation in the second degree (Count I), one count of statutory rape in the first degree (Count II), and four counts of statutory sodomy in the first degree (Counts III-VI), and the trial court's finding that he is a predatory sexual offender under § 566.125 as to counts II through VI.[1] Pierce asserts two points on appeal. In his first point, he claims the trial court abused its discretion in admitting the testimony of a propensity witness who testified that defendant had sexually abused her when she was a minor in 1983. In his second point, he claims the trial court erred in its written entry memorializing its oral

---

[1] All statutory citations are to RSMo (2016).

pronouncement of sentence. Finding merit in point II only, we affirm Pierce's convictions but remand to the circuit court for entry of an order *nunc pro tunc* amending the judgment to conform to the oral pronouncement of sentence.

## Background

Pierce has not challenged the sufficiency of the evidence to support his conviction, so we summarize only that evidence which is relevant to his points on appeal. We are required to view the evidence in the light most favorable to the jury's verdicts. ***State v. Vandergrift***, 669 S.W.3d 282, 291 (Mo. banc 2023).

A jury found Pierce guilty of sexually abusing two minor victims between 2016 and 2019, when the victims were between ages nine and thirteen. Over Pierce's objection, the trial court admitted the testimony of a propensity witness who claimed that Pierce raped her in 1983 when she was thirteen years old. Criminal charges were never filed against Pierce for these alleged acts. After hearing argument from both sides regarding the admissibility of the propensity witness' testimony, the trial court found that its probative value outweighed the risk of prejudicial effects to Pierce's defense.

At trial, the propensity witness testified that Pierce raped her three times when she was twelve and thirteen years old.

> **Q. Can you just tell us about the first time that that happened?**
>
> A. The first time I was babysitting and he came over to visit and I went to check on the baby in the baby's room. And he came in following me and proceeded to put me on the bed and fondle me and continued to sexually assault me.
>
> **Q. Did he ultimately have sexual intercourse with you at that time?**
>
> A. Yes, he did.
>
> **Q. Did you tell him to stop?**

2

A. Yes, I did.

Q. **Did he stop?**

A. No, sir.

Q. **The second time this occurred where were you at?**

A. The second time we were at his uncle's cabin and we went for a walk down a trail and he sexually assaulted me at that time too.

Q. **And how did that happen?**

A. Basically[,] we started kissing and then he just continued to fondle me and then bring me to the ground and even though I would say no, he would continue.

Q. **And did he forcibly penetrate you on that occasion?**

A. Yes.

Q. **You said that there were three occasions. What was going on during the third occasion?**

A. The third time was the worst time. I was babysitting again at a different location. And he came over, he was intoxicated and high and very – he was acting in a very mean manner. He forced himself into the house and onto me and proceeded to rape me in front of the child that I was babysitting.

Q. **How old was this child?**

A. Toddler.

Q. **And at this time you would have been 13 years old?**

A. Yes, I was 13.

Q. **As he left did he say anything?**

A. Well, he said to the child, look what your babysitter's doing.

Q. **You ultimately – you became pregnant as a result of these assaults?**

A. As a result of the last one, yes.

3

. . . .

**Q.  Did you give birth to that child?**

A.  I did.

. . . .

**Q.  Have you had opportunity to speak with the Defendant about these incidents in recent years?**

A.  Yes.  In 2016 [my son] was interested in meeting his biological father and I contacted [Pierce] through Facebook and he responded and then we proceeded with phone conversations.  They seemed to be okay at the time until our last conversation when he wanted to get together with [my son] as a family and I told him I was very uncomfortable with that and he asked why and I said, because you raped me.  And he basically told me that, after arguing, he said that I needed to grow up and get over it.

The testimony of the propensity witness (direct, cross, and redirect) totaled nine pages of transcript.

Pierce testified on his own behalf.  On cross-examination, counsel for the State asked Pierce about his relationship with the propensity witness.  Pierce testified they had a sexual relationship resulting in pregnancy.  Pierce also admitted that the propensity witness was only twelve years old when he met her and that she became pregnant when she was thirteen.

Jury Instruction 5, which directed the jurors on the evaluation of propensity evidence, read as follows:

The defendant is on trial only for the offenses charged.  You may not find the defendant guilty only because you believe he may have been involved in or committed other offenses or bad acts in the past.

If you find and believe from the evidence that the defendant previously was involved in or committed other offenses or bad acts, you may consider such evidence only for the purpose(s) stated in this instruction.

4

If you find and believe from the evidence that defendant was convicted of the offenses of d [sic] Misdemeanor Assault and Domestic Assault in the State of Michigan, you may consider that evidence for the purpose of deciding the believability of the defendant and the weight to be given to his testimony.

As to Counts 1 through 6, if you find and believe from the evidence that the defendant previously committed another criminal act of Statutory Rape in the First Degree committed against [the propensity witness] between January 1, 1983[,] to March 1, 1983, you may consider that evidence for the purpose of corroborating the victim's testimony and or demonstrating the defendant's propensity to commit the offenses for which he is charged in Counts 1 through 6.

In the state's closing argument, the prosecutor declared, "And I'm not going to come in here and I'm not going to ask you to find the Defendant guilty because [the propensity witness] came down and drove and told her story."

In Pierce's closing argument, his counsel stated, "What's not on trial here today? [The propensity witness]. What happened in Michigan. That's not on trial here today." Pierce's counsel further stated, "[The prosecutor] told you what happened in Michigan is not what's important." "[The prosecutor] wants to talk about what supposedly happened in 1983 in Michigan. Or what supposedly happened in something in Michigan."

In the state's closing rebuttal, the prosecutor urged the jury, "[a]nd do not acquit the Defendant because he learned. Because he took notes. Because he learned from the [propensity witness] incident that he learned that vaginal sex with even a 12 or 13-year-old results in pregnancy."

## POINT I

## Legal Principles

Trial courts are "vested with broad discretion to admit or exclude evidence." ***State v. Tisius***, 362 S.W.3d 398, 405 (Mo. banc 2012). On appeal, we review those decisions for abuse of discretion and will reverse only when the error was so prejudicial as to deprive

5

the defendant of a fair trial. ***State v. Robinson***, 535 S.W.3d 761, 765-66 (Mo.App. 2017). A trial court abuses its discretion when an evidentiary ruling is "clearly against the logic of the circumstances then before the trial court and the ruling is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." ***Id.*** (citing ***State v. Kemp***, 212 S.W.3d 135, 145 (Mo. banc 2007)).

Admission of evidence to show a criminal defendant's propensity to commit an offense is generally disfavored, but both federal and state law recognize an exception regarding crimes of a sexual nature against children. ***State v. Williams***, 548 S.W.3d 275, 281-86 (Mo. banc 2018); Fed. R. Evid. 414. Article I, § 18(c) of the Missouri Constitution, as amended by Missouri voters in 2014, provides:

> [I]n prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

"Propensity evidence is evidence of uncharged crimes, wrongs, or acts used to establish that defendant has a natural tendency to commit the crime charged." ***State v. Shockley***, 410 S.W.3d 179, 193 (Mo. banc 2013) (internal punctuation omitted). Section 18(c) specifies that relevant evidence may be excluded when the risk of unfair prejudice substantially outweighs its probative value. ***State v. Brown***, 596 S.W.3d 193, 208 (Mo.App. 2020). To be admissible, evidence must be both logically and legally relevant. ***State v. Burge***, 596 S.W.3d 657, 661 (Mo.App. 2020). Evidence is logically relevant when it "tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence[.]" ***Id.*** (quoting ***State v. Tisius***, 92 S.W.3d 751, 760 (Mo. banc 2002)). "Legal

6

relevance weighs the probative value of the evidence against its costs—unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *State v. Peirano*, 540 S.W.3d 523, 527 (Mo.App. 2018) (quoting *State v. Anderson*, 306 S.W.3d 529, 538 (Mo. banc 2010)). "[T]he circuit court retains substantial discretion in admitting or excluding [propensity] evidence even if there is a danger of some prejudice." *State v. Prince*, 534 S.W.3d 813, 821 (Mo. banc 2017). The inquiry is "intensely case specific." *State v. Shepard*, 662 S.W.3d 761, 769 (Mo.App. 2023) (quoting *Williams*, 548 S.W.3d at 288). While an express finding of legal relevance is not mandatory, the trial court record must reflect "a sound basis for the balancing the amendment requires." *State v. Banks*, 582 S.W.3d 919, 924 (Mo.App. 2019) (quoting *Williams*, 548 S.W.3d at 286).

In evaluating probative value, the Court first "consider[s] whether the evidence is 'sufficient for the jury to conclude the defendant actually committed the prior criminal act.'" *Brown*, 596 S.W.3d at 208 (quoting *Williams*, 548 S.W.3d at 288). The evidence must also tend to show the defendant had a propensity to commit the crimes charged at the time they were allegedly committed. *Williams*, 548 S.W.3d at 289. Relevant to the inquiry is the similarity between the prior acts and the acts charged, and their remoteness in time. *Id.* Evidence of similar acts and victims may be highly probative despite a lengthy lapse of time. *Id.* Courts must also review whether the prosecution needs the propensity evidence to prove its case. *Burge*, 596 S.W.3d at 663. Evidence of prior acts need not be absolutely necessary to the prosecution's case; a finding of helpfulness or practical necessity is sufficient. *Id.*

The probative value of the propensity evidence is weighed against the risk that the evidence could unfairly prejudice the defendant. *Prince*, 534 S.W.3d at 821. As

7

described in § 18(c), for the evidence to be excluded, the danger of unfair prejudice must *substantially* outweigh its probative value. ***Prince***, 534 S.W.3d at 821**.** In ***Williams***, the Missouri Supreme Court set forth a non-exclusive list of factors a court could consider in determining the risks of unfair prejudice. 548 S.W.3d at 290-91. Among these are "whether the jury knows[,] or can fairly infer the defendant was punished for his past acts." ***Brown***, 596 S.W.3d at 209 (quoting ***Williams***, 548 S.W.3d at 290). "If the jury is allowed to infer (or, worse, speculate) the defendant escaped punishment in the past, it may be inclined to convict merely to punish the defendant for past criminal acts rather than for the crime charged." ***Id.*** Courts evaluate the manner in which the evidence is presented, finding less risk of prejudice when past convictions are soberly read into the record and heightened risk of prejudice when emotional, personal, live testimony is introduced. ***Shepard***, 662 S.W.3d at 771. Courts also consider whether the prior acts overwhelm the evidence of the charged crime or whether the prosecution spent an undue amount of time emphasizing the prior conduct. ***Id.***

## Discussion

### *Probative Value*

In undertaking a fact-specific analysis, we find that the testimony of the propensity witness was highly probative. First, the acts described by the propensity witness were similar to the acts with which Pierce was charged in this case.

Second, the ages of the victims were the same. Pierce met the propensity witness when she was twelve and engaged in a sexual relationship with her until she became pregnant at thirteen. The acts alleged by the victims in this case occurred when they were between the ages of eleven and thirteen. We give great weight to the similarity of acts and ages of the victims. ***Williams***, 548 S.W.3d at 289. Although nearly forty years had

elapsed between the currently-charged acts and those committed against the propensity witness, the testimony demonstrates an ongoing propensity to commit similar acts against victims of similar ages. *See, e.g.*, **Peirano**, 540 S.W.3d at 528 ("The passage of time alone will not render evidence inadmissible due to its remoteness."); **Prince**, 534 S.W.3d at 820 (citations omitted) (collecting cases finding acts twenty to thirty years past were not too remote to preclude admissibility). Evidence of acts over time may weigh in favor of ongoing propensity as opposed to isolated incidents. **Shepard**, 662 S.W.3d at 770 (citing **Peirano**, 540 S.W.3d at 529).

Third, the propensity witness and victims in this case were known to Pierce; not strangers.

Finally, the State had an "appreciable" need for the evidence because there was no forensic evidence submitted in its case in chief. **State v. Davison**, 636 S.W.3d 588, 594 (Mo.App. 2021).

Perhaps the most noteworthy point demonstrating the significant probity of the testimony is that Pierce admitted to a sexual relationship with the propensity witness that resulted in pregnancy when the propensity witness was thirteen years old. He admitted paternity of the now-adult child and sought a relationship with him. Defendant's admission, the similarity of the acts, the similar ages of the victims, and the fact that the victims were not strangers to him all demonstrate the defendant's propensity to commit the acts charged. These factors, coupled with the state's "appreciable" need for the evidence all weigh in favor of admissibility of this highly probative evidence.

### *Risk of Prejudicial Effects*

Having determined the probative value of the testimony of the propensity witness, we now look to the risks of unfair prejudice to the defendant. Significantly, Pierce

admitted to engaging in a sexual relationship with the propensity witness resulting in pregnancy when she was a child the age of the victims. His admission minimizes the prejudicial effect that might otherwise adhere to a remote, uncharged act.

Regarding the other factors that might demonstrate a risk of prejudice, we note that the propensity evidence was admitted through the live testimony of the propensity witness, which can result in greater prejudice to the defendant than a stipulation to a prior conviction. *State v. Robinson*, 662 S.W.3d 120, 126 (Mo.App. 2023). Here, however, the propensity witness' testimony was straightforward and matter-of-fact. Nothing in the record indicates it was overly emotional, nor was it extremely graphic or overly detailed. Her testimony was limited, comprising only nine pages of a transcript over 600 pages in length.

The testimony did not overwhelm or overshadow the evidence of the crimes charged. The graphic and detailed nature of Victim 2's testimony was much more alarming than the testimony of the propensity witness.

A risk that the jury intended to punish the defendant for his unadjudicated acts against the propensity witness remains, but that risk was minimized by the actions of the court and counsel for both sides. Both defense counsel and the prosecution reminded the jurors in their closing arguments that the defendant was not on trial for the acts alleged by the propensity witness. The jurors also were guided by Instruction 5, which directed them on how to evaluate the propensity evidence, what weight to give the testimony, and what inferences the jury could draw from the testimony and its relationship to the evidence and charges before them. Overall, the risks of unfair prejudice to the defendant were minimized by the defendant's admissions and the actions of the trial court and the parties, and could not be said to *substantially* outweigh the probative value of the

10

testimony of the propensity witness.

### *Judge Powell's Concurring Opinion  in State v. Minor*

In his brief, Pierce heavily relies on Judge Powell's concurring opinion in **State v. Minor**, 648 S.W.3d 721 (Mo. banc 2022).[2]  In that concurrence, Judge Powell thoughtfully discussed the potential risks of admission of unadjudicated propensity evidence in child sexual abuse cases.  He contrasted "the stoic and emotionless presentation of an exhibit evincing the existence of a prior conviction" with "a living, breathing person recounting unfathomable details of traumatic events and abuse" to prove unadjudicated conduct.  *Id.*  at 739 (Powell, J., concurring).  Judge Powell was also concerned with the "fundamental problem of establishing the defendant engaged in the unadjudicated criminal act."  *Id.*  He focused on the risk that establishing the defendant actually committed the prior criminal act could result in "a trial within the trial," creating a "mountain" of extrinsic evidence required to bolster the testimony of a propensity witness, creating "confusion and unfair prejudice" and a veritable "Pandora's Box" of collateral evidence.  *Id.* at 740-41.

Even though the propensity witness here testified to unadjudicated acts, Judge Powell's concerns are not otherwise implicated in this case.  Pierce admitted to having a sexual relationship that resulted in pregnancy with the then thirteen-year-old propensity witness.  No extrinsic evidence to corroborate or bolster the testimony of the propensity witness was proffered or admitted at trial; only her live testimony.  Thus, the potential "trial within the trial" that troubled Judge Powell did not occur in this case.  Moreover, the testimony was not overly emotional, graphic, or detailed.  It was presented as a

---

[2] Wilson, C.J., Russell, Breckenridge, and Ransom, JJ. concurred in Judge Powell's opinion.

straightforward and sparse recitation of facts, encompassing only nine pages of a 600-page transcript. Further distinguishing this case from Judge Powell's concern about the proverbial "Pandora's Box" of extrinsic and collateral evidence is the fact, discussed above, that the defendant admitted to impregnating the then thirteen-year-old propensity witness, limiting both confusion and the logical inferences the jury was required to make. The prejudicial effects of the propensity witness' testimony did not substantially outweigh its probative value. The trial court's finding was not an abuse of discretion. Accordingly, Point I is denied.

## POINT II

On counts II-VI, the circuit court judge sentenced Pierce as a predatory sexual offender under § 566.125, and orally pronounced Pierce's sentence as follows:

> Defendant to be sentenced on Count I, on the Class B felony of child molestation in the second degree, to a term of 15 years in the Missouri Department of Corrections. That Counts II through VI -- under Missouri law, it is required that the term of imprisonment shall be life with the eligibility of parole. And so the Court orders that on Counts II through VI, that the sentences shall be life imprisonment with the opportunity for parole.
>
> And under Missouri law, the Court must set the minimum time required to be served before a predatory sexual offender is eligible for parole, conditional release, or other early release by the Department of Corrections, and this court finds that on Counts II through VI, the Defendant shall not be eligible for parole until 30 years.

In the written judgment, the length of Pierce's sentences for Counts II, III, IV, V, and VI is "99 years" as opposed to the life sentences announced at sentencing. Pierce argues, and the State concedes, that the error in the written sentence is entitled to plain error review under Rule 30.20.[3]

---

[3] Rule references are to Missouri Court Rules (2022).

"If there is a material difference between the court's oral pronouncement of sentence and the written judgment, the oral pronouncement controls." ***State v. Clark***, 494 S.W.3d 8, 14 (Mo.App. 2016). Errors of this nature are "clerical," and may be corrected *nunc pro tunc*. ***State v. Fewins***, 638 S.W.3d 36, 39 (Mo.App. 2021).

Accordingly, the case is remanded to the circuit court for entry of a written judgment correcting the clerical error and conforming to the oral pronouncement of sentence. In all other respects, the judgment is affirmed.

JACK A. L. GOODMAN, C.J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS